Carole Joan HANKEY,
Petitioner-Respondent,

v.

William Raymond HANKEY,
Respondent-Appellant.

No. 41992.

Missouri Court of Appeals,
Eastern District,
Division Four.

Aug. 25, 1981.

Roger M. Hibbits, Clayton, for respondent-appellant.

G. Jeffrey Lockett, St. Charles, for petitioner-respondent.

SATZ, Presiding Judge.

Respondent-wife initiated this action below requesting the trial court to hold appellant-husband in contempt for failure to pay child support. The trial court held the husband in contempt and awarded the wife attorney's fees. We reverse the judgment of contempt and affirm the award of attorney's fees.

The basic facts are not in dispute. By a decree entered in June, 1973, the marriage between appellant-husband and respondent-wife was dissolved and the husband was ordered to pay $20.00 per week per child for each of the parties two minor children. Custody of the two children was placed with the wife. The husband made the support payments from the date of the decree until December, 1975, when the wife moved to California and the two children went to live with the husband. At that time, the husband and wife agreed that the husband would take "custody" of the children and he would not have to pay child support. In May, 1977, the wife returned to Missouri, and, in July, 1978, the younger child went to live with the wife. The older child remained with the husband. The husband did not resume payment of support for the

younger child. According to his testimony, he believed he and the wife were acting under their oral agreement which, he believed, modified the order of child support.

In her testimony, the wife unequivocally admitted to the existence and terms of the 1975 agreement with the husband. She also admitted that when she returned from California in May, 1977, she and the husband continued to act under this oral agreement, and she stated she made no effort to modify the agreement. She also stated she had no discussion with the husband concerning child support payments between July, 1978, when the younger child came to live with her, and the trial of this contempt proceeding. Prior to the hearing for contempt, she made no demand on the husband for child support payment nor did she attempt to collect payment by any other means. Based upon this record, the trial court found the husband's failure to pay support payments for the younger child, after her return to the wife, was "wilful and contumacious" and held the husband in contempt.

In this appeal, the determinative issue is whether defendant's violation of the court order of support was "wilful and contumacious." Defendant contends his failure to pay the child support resulted from his belief that his oral agreement with his wife had modified the order of child support and, therefore, he did not intentionally or wilfully violate that order. More specifically, he contends the conclusion he lacked intent to violate the order of support is the only sensible conclusion that can be supported by the record and, therefore, he argues the trial court's contrary conclusion is erroneous because it cannot be and is not supported by "substantial evidence." See *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We agree.

As far as the record shows, this action for contempt was not brought pursuant to § 452.345 RSMo 1978 or § 476.110 RSMo 1978.[1] Apparently, the wife invoked the

1. § 452.345(4) provides:
   "If a party fails to make required payment, the circuit clerk shall send by registered or certified mail notice of the arrearage to the obligor. If payment of the sum due is not made to the circuit clerk within ten days after send-

trial court's inherent power to adjudicate civil contempt proceedings in child support cases. *See, State ex rel McCurley v. Hanna*, 535 S.W.2d 107, 108 (Mo. banc 1976). The wife made a prima facie case of contempt by showing the husband's violation of the order for child support. *Blair v. Blair*, 600 S.W.2d 143, 145 (Mo.App.1980); *See also, In re Marriage of Vanet*, 544 S.W.2d 236, 245–6 (Mo.App.1976). Once the prima facie case was made, the "burden of proof" shifted to the husband to prove his affirmative defense. *Blair v. Blair, supra* at 145; *See also, In re Marriage of Vanet, supra* at 245–46. As noted, his defense was he did not intend to violate the order of support because he believed the oral agreement between the wife had modified the court order. If proved, this is a proper defense in both logic and law. *See, Wolfe v. Wolfe*, 303 Ill.App. 188, 24 N.E.2d 871, 872–73 (1940); 24 Am.Jur.2d *Divorce and Separation* § 869 (1966). We find the husband did prove his defense and the trial court had no reasonable basis to reject it.

There can be no dispute, that, at the time the wife left for California, she and the husband orally agreed he would not have to pay support. She testified: "When I went to California, there was a definite verbal agreement between Bill and I on this child support issue, that he was going to take them and not pay me." More important, from the following cross-examination of the wife, it is clear the agreement was not changed on his return:

"Q. Have you gone back to him and worked out a new agreement since the situation has changed.

A. No.

.    .    .    .    .

Q. Have you made any effort whatsoever to modify the agreement that you say you entered into with him when you went to California.

A. No."

Furthermore, as noted, she testified she did not write the husband, phone him or send him a message in an attempt to modify the agreement. Finally, she made no demand on the husband to resume the original child support payment prior to initiating the action for contempt.

Even if the trial court chose to disbelieve the uncontradicted testimony of the husband, *Sebree v. Rosen*, 349 S.W.2d 865, 872 (Mo.1961), the wife, as a party, is bound by her uncontradicted testimony. *Silberstein v. Berwald*, 460 S.W.2d 707, 710 (Mo.1970); *Talley v. Bowen Construction Co.*, 340 S.W.2d 701, 706 (Mo.1960). The only sensible inference from the recited facts is that the husband did believe the parties had a modified agreement concerning child support, and his conduct followed his belief. There is nothing in the record to support a rejection of this belief or to make his resulting conduct suspect. Moreover, there is nothing in the record which reasonably would require him to change this conduct when the younger child returned to the wife. To conclude the husband did not hold his stated belief or knew his conduct should change, requires reading a "condition subsequent" into the agreement that it terminated as to either one or both children if and when either one or both returned to live with the wife, and, further, that the husband unquestionably knew or should have known of this condition. This is a free leap in logic not justified by the record. Thus, there is no substantial evidence in the record that would allow the trial court to infer the husband did not believe the parties had a modified agreement concerning child support. To the contrary, the evidence sup-

---

ing notice, the circuit clerk shall certify the amount due to the prosecuting attorney. The prosecuting attorney shall, with the consent of the obligee, promptly initiate contempt proceedings against the obligor."

§ 476.110 provides:

"Every court of record shall have power to punish as for criminal contempt persons guilty of

.    .    .    .    .

(3) Wilful disobedience of any process or order lawfully issued or made by it;

(4) Resistance wilfully offered by any person to the lawful order or process of the court; ...."

ports the inference that he did hold this belief. He thus did not intentionally disobey the court's order and cannot be held in contempt.

■ The husband also challenges the award of attorney's fees to the wife's attorney. He does not challenge the authority of the court to award attorney's fees in this contempt action and we do not address that issue here. However, he contends the award was improper because only the hourly rate of the wife's attorney was established. This contention is without merit.

■ To establish the proper attorney's fees in this case, it may have been the better practice to establish by explicit evidence the reasonable hourly rate for the work done and the reasonable number of hours essential to complete that work. The attorney's fee would be the product of these two figures. However, in Missouri, ". . . courts are themselves experts on the question of attorney's fees and the judge who personally tries a case and is acquainted with all the issues involved is in a position to fix the amount of attorney's fees without the aid of evidence." *Agnew v. Johnson*, 352 Mo. 222, 176 S.W.2d 489, 493 (1943); *Jafarian-Kerman v. Jafarian-Kerman*, 424 S.W.2d 333, 340 (Mo.App.1967).

■ The husband also contends the award of attorney's fees was improper because the evidence of the wife's inability to pay was inadequate. The wife testified, however, that she was unemployed and could not pay her attorney. Her testimony is sufficient evidence of her inability to pay her attorney. Furthermore, since the authority of the trial court to award attorney's fees is not in question here, we see no reason why the exercise of that authority should be more circumscribed here than its exercise in other comparable dissolution cases. The need of the wife is but one factor to consider in awarding attorney's fees. *Beckman v. Beckman*, 545 S.W.2d 300, 302 (Mo.App.1976). "Such [attorney's] fees may be granted even when need is not established." *Id.* at 302. Thus, the husband's second attack on the award of attorney's fees is also without merit.

Judgment of contempt reversed. Judgment of attorney's fees affirmed.

SMITH and SIMON, JJ., concur.