Susan SCOTT, Respondent,

v.

Larry Edward SCOTT, Appellant.

No. WD 33162.

Missouri Court of Appeals,
Western District.

Dec. 21, 1982.

Larry E. Scott, St. Joseph, for appellant.

Grace S. Day, St. Joseph, for respondent.

Before MANFORD, P.J., and WASSER-STROM and KENNEDY, JJ.

KENNEDY, Judge.

This is a husband's appeal from a dissolution decree. He complains of the court's division of marital property and of an award of periodic maintenance payable by him to the wife.

The parties were married in 1971. The husband was employed in a family business until 1975, when he entered law school. He graduated from law school in 1978. The family then moved from Topeka, where he had attended law school, to St. Joseph, where he was associated with a prominent law firm.

The marriage in the meantime had produced two children, and a third arrived in St. Joseph. The children were respectively eight, five and one years of age at trial time. The court's decree gave custody of the three children to the wife and ordered the husband to pay child support of $440 per month.

The decree gave to the wife the following marital property:

| | |
|---|---|
| House valued at $58,000, subject to $35,000 mortgage | $ 23,000 [1] |
| Contents of house | 4,000 |
| 1979 Ford LTD valued at $4,500, subject to $2,500 lien | 2,000 |

The decree set aside to the wife non-marital property consisting of table silver, received by her as a gift from her grandmother, valued at $3,000.

To the husband the decree gave the following marital property:

| | |
|---|---|
| A 1972 Mercury automobile | $ 300 |
| 28 shares of stock of Superior School Supply | 7,420 |
| Household goods | 1,400 |
| Pension plan | 1,900 |
| Marital debts to be paid by husband | (3,500) |
| | $ 7,520 |

The husband was also awarded life insurance policies, but was ordered also to pay a $1,000 policy loan. The record shows no net value for these insurance policies.

The decree set aside to the husband as non-marital property stock in his family's two corporations valued at $18,987.

In addition to the foregoing, the trial court ordered the husband to pay to the wife "as and for a property settlement, the sum of $12,000". This was payable at the rate of $100 per month until September 1, 1985, and $200 per month thereafter, but allowed payment in a lump sum if husband so chose.

### 1. Division of marital property.

We will lay aside the $12,000 cash payment for the time being and consider the division of the marital estate. The value of the marital property as listed above, net of the marital debts assigned to the husband for payment, was $36,520, of which the wife received $29,000, or 79.4%. The husband received $7,520, or 20.6%. We

have approved property divisions of 84–16 (*Stamme v. Stamme,* 589 S.W.2d 50 (Mo. App.1979)); 72–28 (*Arp v. Arp,* 572 S.W.2d 232 (Mo.App.1978)); 88–12 (*In re Marriage of Burris,* 557 S.W.2d 917 (Mo.App.1977)); and 74–26 (*In re Marriage of Vanet,* 544 S.W.2d 236 (Mo.App.1976)).

We have noted in the one-sided property division cases that frequently the family home is the largest part of a modest estate. That is the case here. The family residence represents well over 50% in value of the marital property. The court is reluctant to uproot the custodial parent and the children by requiring its sale. Always there is expense involved in a sale and in moving one's household. And, after all that, who knows whether the custodial parent and children will be able to relocate in suitable quarters? Why trade the relative stability of the present home for dislocation and uncertainty? That is the policy of § 452.330.1(3), RSMo (Supp.1982), where it is directed that the court consider among other factors "the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children". The same considerations approve the award of furniture and car to the wife in this case.

The wife contributed from her non-marital property $7,000 of the original $11,000 down payment on the house, another factor for the court's consideration and which tips the scales toward the wife. § 452.330.1(1), RSMo (Supp.1982).

We cannot say that the court's division of marital property was erroneous.

### 2. Cash award of $12,000 payable to wife by husband.

We turn now to the $12,000 cash payment required to be made by the husband to wife. This presents a different problem. It is this $12,000 cash payment which calls for appellant's most emphatic protests. It results,

1. The trial court in his original decree erroneously showed the value of the equity in the house at $13,000. He corrected the arithmetic by interlineation three days later, showing the equity value to be $23,000. Husband treats

this as increasing the wife's award by $10,000. The judgment was in the trial court's control for 30 days, Supreme Court Rule 75.01, and he was entirely correct in making the change.

husband argues, in a marital property division which gives the wife more than 100% of the marital property and leaves him in a deficit position.

The trouble with the husband's position is his treatment of the $12,000 cash payment as a division of marital property. If it could only be viewed as a division of marital property, it would present a new kind of case. We have often approved the award of cash from one spouse to the other in order to achieve a desired division without the necessity to liquidate assets. *Calia v. Calia,* 624 S.W.2d 870, 872 (Mo.App.1981); *Claunch v. Claunch,* 525 S.W.2d 788, 791 (Mo.App.1975). It is not required that an identifiable fund be designated from which the cash is to be paid from one spouse to the other. *Calia v. Calia,* 624 S.W.2d at 872. A cash award is in certain cases a very useful device. In this case, however, the trial court did not—as appellant bitterly points out—use it to achieve a desired division of existent marital property, but creates and adds to the marital estate a $12,000 chose and awards it to the wife.

This is not, however, a division of marital property. The court in its decree does not call the $12,000 award a part of the marital property but calls it a "property settlement". This nomenclature is inexact and unclear. A "property settlement" is a contract, and is not appropriate for an unagreed decree such as the one before us. But we are not bound by nomenclature and we may look at the substance of the award.

The trial court does not explain his reasoning, but we think the award may be sustained upon the following grounds:

The husband, as noted before, attended law school from 1975 to 1978, obtaining a law degree. He now practices his profession in association with an important St. Joseph law firm. At the time of the trial he was in his fourth year of law practice. His annual earnings had increased from $15,500 to $23,500.

The wife during the law school years had been the principal breadwinner. She had worked two or three months for a Ramada Inn at $2.75 per hour, then had worked for the Menninger Clinic full time for three years as a child counselor. Her total earnings during that period, as we understand the evidence, were $17,400 at Menninger's plus her Ramada Inn earnings. In addition to her earnings, she had contributed $14,500 of non-marital assets, from an educational trust of which she was the beneficiary. The husband while he was in law school had worked 10 to 20 hours per week at $2.50 per hour, and had assisted with the housework. The earnings of both spouses and the proceeds of the wife's trust had been supplemented by substantial gifts from the wife's family during this period.

It is necessary to consider the enhanced prospects of the husband by reason of his professional education. The wife made the contribution to the education which we have described in the preceding paragraph, but she will not be around for the anticipated harvest. This kind of situation has been treated by different courts in various ways. Some have treated the husband's professional education as a species of "marital property". *In re Marriage of Horstmann,* 263 N.W.2d 885, 891 (Iowa 1978); *Inman v. Inman,* 578 S.W.2d 266, 269 (Ky. App.1979). A majority of courts which have considered the question, however, have rejected the "marital property" approach. *In re Marriage of Aufmuth,* 89 Cal.App.3d 446, 461–62, 152 Cal.Rptr. 668, 677–78 (1979), overruled in part on other grounds, *Lucas v. Lucas,* 27 Cal.3d 808, 614 P.2d 285, 166 Cal.Rptr. 853 (1980); *In re Marriage of Graham,* 194 Colo. 429, 574 P.2d 75, 77 (banc 1978); *Mahoney v. Mahoney,* 182 N.J.Super. 598, 442 A.2d 1062, 1066 (App.Div.1982).

One appealing approach is that taken by *Moss v. Moss,* 80 Mich.App. 693, 264 N.W.2d 97 (1978). There an award of $15,000 lump sum alimony was awarded to a wife who had just finished putting her husband through medical school. At the time of the divorce, she was earning more than her husband and normally would not be entitled to maintenance. The reviewing court, however, upheld the award. Wrote the court:

There were no substantial assets acquired during the marriage, a result in part from the cost of the husband's education. In lieu of a property settlement, the trial court awarded the wife $15,000 alimony in gross.... The trial court deemed this an equitable adjustment of the parties' interests. Both parties appeal. The husband claims that an award of alimony where his wife's current earnings are greater than his own is an abuse of discretion. The wife claims the award should be raised to $60,000 to reflect her efforts in the husband's acquisition of an M.D. degree.

....

We are not convinced we would have reached a different result had we occupied the position of the trial court. (Citation omitted). It was impossible to award the wife a portion of the husband's medical degree, the only substantial asset acquired during coverture. An award of $15,000 fairly represents the wife's contribution to the acquisition of that asset, financial and otherwise.

264 N.W.2d at 98.

■ Lump sum maintenance, even in addition to periodic maintenance, is permissible in Missouri in "special situations". *Warren v. Warren,* 601 S.W.2d 683, 686 n. 1 (Mo.App.1980); *Carr v. Carr,* 556 S.W.2d 511, 512 (Mo.App.1977).

■ In our own state, our courts have never attempted to pigeonhole a professional education degree as "marital property" nor has any court directed compensation by the lump sum maintenance approach or any other exclusive approach. Better to leave it that way. It is not necessary to hamstring our trial courts by confining them to a marital property theory or a lump sum maintenance theory, or any other particular approach. The courts are agreed that, in striking a balance between husband and wife, the husband's professional education, to which the wife contributed by earnings, gifts and privation, are to be taken into account. *Lowrey v. Lowrey,* 633 S.W.2d 157, 160 (Mo.App.1982); In re *Marriage of Vanet,* 544 S.W.2d at 241. The trial courts

have flexibility to fashion their decrees to meet the variety of circumstances presented by the cases. *Hawkins v. Hawkins,* 511 S.W.2d 811, 813 (Mo.1974); *Calia v. Calia,* 624 S.W.2d at 872.

■ *In re Marriage of Vanet,* supra, a case in many points like the one before us, we said:

The financial contribution made by the wife towards the husband's legal education was of inestimable value with respect to acquisition of the marital property.... The "economic circumstances" of the wife at the time the marital property was divided were far less desirable than were those of the husband since he possessed the earning power of a lawyer while she possessed only the earning power of a secretary of limited skill.

544 S.W.2d at 241. Those considerations, among others, were deemed by the court to justify an unequal distribution of marital property between the parties.

A further consideration commends the $12,000 cash award from husband to wife. The wife is left by the decree with no liquid assets. In receiving the house she receives also the mortgage payments of approximately $400 per month. The car is also subject to a lien payable at the rate of $80 per month. The only non-marital property she received was the silverware, a gift from her grandmother, valued at $3,000. All her non-marital estate had gone into the marital stream—$14,500 family trust proceeds into the expense of acquiring the husband's legal education and family living expenses during the education period, and $7,000 of corporate stock into the original $11,000 down payment on the house. The husband on the other hand still has untouched non-marital property of the agreed, or at least undisputed, value of $18,987.

And finally: The court awarded the wife no attorney's fees, finding "(t)hat each parties' attorneys have devoted substantially equal effort for their clients and that as a consequence of distribution of marital property hereinafter set out, each party should pay their own attorney fees." There is

evidence which would place the wife's trial attorney fees at $3,806.25.

We cannot convict the trial court of error in awarding the $12,000 cash payment from the husband to the wife.

3. *Maintenance to wife.*

The court awarded the wife maintenance of $400 per month for four months, then $200 per month for 44 months thereafter. The husband challenges this award.

The wife's living expenses were found by the court to be $1,600 per month. This figure included a monthly house payment of $400. She would receive $440 per month child support. With $400 monthly maintenance she would still fall $760 short of her needs—$960 short when the maintenance was reduced from $400 per month to $200 per month at the end of four months.

The wife is 31 years of age, and has a master's degree in elementary guidance and counseling. She had taught psychology on a college level at Missouri Western College. She was unemployed at trial time but if employed she would earn from $10,000 to $12,000 per year.

The husband complains of the wife's being unemployed, and emphasizes her refusal to pursue a job an employment agency had called her about. The employment agency had called at his suggestion. The wife explained that the job—which had to do with selling insurance, or trust services—was not the kind of job she was prepared for. She said that taking it would require the payment of $2,400 per year for baby sitters. She said she was seeking employment in her field.

■ While the wife is to do her best to become self-supporting at the earliest possible time, she is not required to accept a job unsuited to her interests and talents for no other reason than its availability, when more suitable jobs are in reasonable prospect. *Marriage of Faulkner,* 582 S.W.2d 292, 295 (Mo.App.1979).

■ The husband points also to the history of gifts from the wife's family to her. During the marriage of the parties the wife's parents had made gifts to the couple totaling $35,390. The husband says the wife may reasonably be expected to receive $7,500 per year in gifts from her parents. The court was not required to take into account such an uncertain source of funds as future gifts.

■ The husband points out that his own take-home pay is $1,367.48 per month, and that the decree requires him to pay child support of $440, "property settlement" of $100 per month, and maintenance of $400 per month, a total of $940. His own living expenses were $760 per month. Thus there is a gap of $333 per month between the husband's income and his monthly requirements.

The maintenance, however, was to reduce at the end of four months to $200 per month. The court's decree specifically provided the husband could pay the $12,000 in a lump sum if he chose to do so. His non-marital property, represented by the corporate stock, gives him a source of funds should he wish to pay off this $12,000 cash payment in a lump sum. This reduces the monthly gap to $33 per month, and the court specifically found that the husband's income was increasing and could reasonably be expected to increase from year to year.

We find the maintenance award to be within the court's discretion under statutory standards, and we will not disturb the same. *White v. White,* 601 S.W.2d 644 (Mo. App.1980).

The judgment is affirmed.

All concur.