Sally S. DAVOLT, Petitioner–Appellant,

v.

Gary D. DAVOLT,
Respondent–Respondent.

No. WD 40491.

Missouri Court of Appeals,
Western District.

Jan. 31, 1989.

Nicholas L. Swischer, Nevada, for petitioner-appellant.

Lynn M. Ewing, Nevada, for respondent-respondent.

Before SHANGLER, P.J., and CLARK and NUGENT, JJ.

NUGENT, Judge.

Petitioner Sally Davolt appeals from the decree dissolving her marriage to Respondent Gary Davolt. Neither party appeals from those portions of the decree that dissolved the marriage or that awarded custody of the two children to Mrs. Davolt. Mrs. Davolt appeals, however, from the court's failure to award her an interest in Mr. Davolt's pension benefits and to award her maintenance. We affirm.

Sally Davolt and Gary Davolt were married in 1969. Two children were born of the union: Stephanie in 1972, and Robert in 1976. The parties lived separately for seven months in 1984 and began their final separation on April 2, 1987. The court entered the decree dissolving their marriage on February 26, 1988, and filed an amended decree on March 27, 1988.

The record reveals Mr. Davolt's involvement in three extra-marital affairs. Two took place while the parties still lived together, and the third occurred following their final separation. Each extra-marital relationship involved a woman for whom Mr. Davolt held supervisory responsibility at his places of employment.

During the course of the marriage both parties pursued their college education. Mrs. Davolt holds a bachelor's degree in education, with some graduate work in special education, and Mr. Davolt holds a bachelor's degree and a master's degree. Mrs. Davolt worked as a teacher during the marriage. Her teaching income and Mr. Davolt's income from the G.I. Bill provided the family income while Mr. Davolt obtained his education.

At the time of the decree Mrs. Davolt worked for a state hospital as a special education teacher. Her take-home pay from that employment is $1,583 per month. Mr. Davolt has worked in supervisory positions in recreational therapy, and at the time of the decree worked at the Heartland hospital as the activity therapy manager. His take-home pay was then $1,755 per month.

Twice, Mrs. Davolt has withdrawn funds, totalling approximately $10,000, from her teachers' retirement account. She used some of those funds to cover medical expenses for Mr. Davolt, and to support the family during his 1984 treatment for emotional problems at the Stress Center. She used the remainder of the funds to pay family expenses during their periods of separation. At the time of the decree, her rights had not vested, but she had established retirement credit in the Missouri State Employees' Retirement fund. She testified at trial that she would receive some credit for her prior service as a teacher, but she was uncertain about the amount. She noted the possibility that the state would give her six years credit for her prior teaching service plus two years of credit for her current position at the state hospital. The record reveals no cash value for those benefits.

Mr. Davolt holds vested rights to retirement benefits for his prior employment. Although he may not redeem his rights for cash, he is entitled to $270 per month upon retirement at age sixty-five or an undetermined lesser amount upon retirement at age fifty-five. In its division of marital property the court assigned no dollar value to either pension and awarded each party the rights to the pensions earned during their respective employments.

The court apportioned property with a gross value of $7,217 to Mrs. Davolt, and

approximately $9,700[1] to Mr. Davolt. It ordered Mr. Davolt to pay $1,200 of Mrs. Davolt's attorney fees, payable at fifty dollars per month. In addition to the attorney fees, Mr. Davolt must also pay approximately $8,000 in marital debts and court costs, and $2,850 in post-separation debts. Mrs. Davolt must pay approximately $2,800 of the marital debt. She retains custody of the children, and Mr. Davolt must pay a total of $537.25 monthly child support payments, including the cost of health insurance for the children. He must also pay $1,125 for pretrial child support, payable at twenty-five dollars per month.

*Murphy v. Carron*, 536 S.W.2d 30 (Mo. 1976) (en banc), guides our review of this court-tried case. We must sustain the trial court's decision unless it is against the weight of the evidence, no substantial evidence supports it, or it erroneously applies or declares the law. *Id.* at 32. We must also recognize the trial court's broad discretion in formulating a dissolution of marriage decree. *Featherston v. Featherston*, 710 S.W.2d 288, 291 (Mo.App.1986).

■ Mrs. Davolt argues in her first point on appeal that the court erred when it failed to award her an interest in Mr. Davolt's vested pension benefits. No doubt the court would err if it failed to consider the value of pension benefits in making its division of marital property. The Supreme Court's decision in *Kuchta v. Kuchta*, 636 S.W.2d 663, 664 (Mo.1982) (en banc), requires that pension benefits earned during the course of the marriage be considered part of the marital property. In this case, however, the court listed the pensions under the marital property awarded to each spouse. That action is consistent with *Kuchta*.

Mrs. Davolt contends, nevertheless, that the failure to award her a share of Mr. Davolt's pension benefits results in an inequitable distribution of the marital assets because his benefits are vested and hers are as yet contingent. She also emphasizes his marital infidelity and that she lost much of her retirement security by having to withdraw the funds to pay family expenses. She, a faithful wife who spent her pension funds to support the family, is left without security, while he, the unfaithful husband, retains his vested right to retirement income.

■ That argument carries little weight. First, the law requires only that pension benefits be considered part of the marital property, not that they themselves be divided. *In re Marriage of Witzel*, 727 S.W.2d 214, 217–18 (Mo.App.1987). It requires only that the division of the marital property, when considered in light of the award of pension benefits, be just. *Id.* An analysis of the property division in this case in light of the statutory factors governing such divisions shows that the court reached a just result.

The marital infidelity that Mrs. Davolt stresses constitutes but one of the factors the court may consider in reaching its decision. *See* § 452.330(4)[2]. The court's award of attorney fees and court costs to Mrs. Davolt indicates that it considered this factor. The court must also consider:

(1) The contribution of each spouse to the acquisition of the marital property, including the contribution of the spouse as a homemaker;

(2) The value of the property set apart to each spouse;

(3) The economic circumstances of each spouse at the time the division of property is to become effective.

. . . .

§ 452.330. Here, the record reveals economic contributions by each spouse to the acquisition of the marital property as well as time spent by each spouse in the role of homemaker. Both spouses were employed at the time of the decree. Although Mr. Davolt makes approximately $175 per month more that Mrs. Davolt, he must also

---

**1.** This amount includes a payment of $1,780 in accrued vacation pay that was apportioned to him in the amended decree. The original decree listed the value of his share of the marital property at 7,933.

**2.** All sectional references are to Revised Statutes of Missouri, 1986.

pay $537.25 in monthly child support. Finally, the property division, exclusive of the pension benefits, weighs heavily in favor of Mrs. Davolt. The net value of her award, when her debts are subtracted is approximately $4,400.00. On the other hand, Mr. Davolt's net award amounts to less than $500.00 when we subtract from the award his share of Mrs. Davolt's attorney fees, the court costs, and his share of the marital debt.[3]

The decree also awarded Mrs. Davolt whatever pension rights she might obtain for her service to the state. Although unclear, her testimony at trial regarding this matter indicated a possibility that she would receive credit for eight years of service. The evidence did not establish that her pension rights were yet vested, but she remained a state employee at the time of trial. No evidence established a specific cash equivalent value for either pension. Indeed, the trial court listed the value of each benefit as "unknown."

We may assume for the sake of argument that because Mr. Davolt's pension rights are vested they are worth more than any held by Mrs. Davolt. The greater net value of the other property awarded to Mrs. Davolt, however, should adequately offset any difference in value between the two pensions. Moreover, the award to each spouse of his or her own pension follows *Kuchta's* teaching that, "[i]n any dissolution proceeding, the most desired result would be a *full* and *final* division of marital property without contingencies." 636 S.W.2d at 666 (emphasis in original). We conclude, therefore, that the division of the property, considered in light of all of the statutory factors, is not unjust.

■ Mrs. Davolt's second point on appeal alleges error in the trial court's failure to award her maintenance. We review the court's decision in this regard in light of the factors contained in § 452.335, keeping in mind the trial court's broad discretion. *Stoerkel v. Stoerkel*, 711 S.W.2d 594, 596 (Mo.App.1986). Before the court may

award maintenance, it must find that the spouse seeking maintenance:

(1) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and

(2) Is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

§ 452.335.1.

The court must find that both circumstances exist before awarding maintenance. Here, the modest marital estate contained no income producing property, so we may conclude that the marital property will not satisfy Mrs. Davolt's reasonable needs. The record does establish, however, that Mrs. Davolt currently works as a special education teacher for the State of Missouri. Her current employment is consistent with her training and previous experience. *See Brueggemann v. Brueggemann*, 551 S.W. 2d 853, 858 (Mo.App.1977) (en banc) (appropriate employment is that which is appropriate to spouse's skills and interests). Her salary from that employment plus the child support awarded to her come within $62.25 of meeting her claimed expenses.

Another factor to consider when a spouse seeks maintenance is the ability of the spouse who must pay that maintenance to meet that obligation. *See Id.* at 859; § 452.335.2(6). In the instant case, the trial court found that to permit Mr. Davolt to meet his financial obligations, the court would have to reduce his monthly payments Mrs. Davolt's attorney fees and on the pretrial child support award. In light of Mr. Davolt's financial obligations, and considering Mrs. Davolt's income from her employment and child support, the trial court properly refused to award her maintenance. *See Stoerkel v. Stoerkel, supra*, where the court, based on the husband's inability to pay, reduced the amount of maintenance awarded to the wife.

---

**3.** *Weiss v. Weiss*, 702 S.W.2d 948, 958 (Mo.App. 1986), considered the award to the wife of attorney fees as a factor to determine whether the

trial court had made a just division of the marital property.

Nevertheless, Mrs. Davolt, citing *Scott v. Scott*, 645 S.W.2d 193 (Mo.App.1982), argues that the court should have awarded her "maintenance in gross" to compensate her for her contributions toward Mr. Davolt's graduate degree. In *Scott*, the court affirmed the trial court's award of a $12,-000 "chose in action" to the wife in addition to her share of the marital property. During the time the husband attended law school, Mrs. Scott had provided most of the family's income from her employment and from her family's trust fund. There the court of appeals noted her financial difficulties, her own attorney's fees, her contribution of non-marital property toward her husband's education, and his consistently increasing earning power, and found no error in the trial court's action. *Id.* at 197–98.

Here, Mrs. Davolt worked to supplement the family income while Mr. Davolt obtained his education. Those earnings were, however, marital property. Unlike the wife in *Scott*, Mrs. Davolt did not contribute non-marital assets to Mr. Davolt's education. The court has also relieved her of the burden of a portion of her attorney's fees. Moreover, other than the current $175 difference in their earnings, Mrs. Davolt has failed to point to any evidence that Mr. Davolt has substantially greater earning power than she.

Mrs. Davolt's concentration on Mr. Davolt's misconduct fails to advance her argument. A court contemplating an award of maintenance may only consider the conduct of the party seeking maintenance. § 452.335.2(7). The legislative scheme removes any punitive considerations from such a decision. *Brueggemann, supra,* at 856. The trial court properly exercised its discretion in refusing to award maintenance to the petitioner.

Accordingly, we uphold the decision of the trial court.

All concur.