**Beverly Ann ROARK, Appellant, Cross-Respondent,**

v.

**Michael ROARK, Respondent, Cross-Appellant.**

No. 48148.

Missouri Court of Appeals, Eastern District, Division Three.

July 23, 1985.

Susan M. Hais, Clayton, for Beverly Roark appellant, cross-respondent.

Michael Roark, St. Louis, for Michael Roark respondent, cross-appellant.

DOWD, Presiding Judge.

Wife appeals and husband cross-appeals a decree dissolving their fourteen year marriage which resulted in one child. The parties do not contest the dissolution of the marriage. On appeal, the wife contends that the trial court erred in failing to consider husband's earning potential in awarding child support and maintenance, that the trial court erred in failing to declare the husband's medical degree and practice marital property. On husband's pro se cross-appeal, he contends that the trial court abused its discretion in ordering an undivided marital asset sold in order to pay attorneys fees, and in retaining jurisdiction over the issue of maintenance. The wife was awarded $10,000.00 in gross maintenance, $1.00 per year in periodic maintenance, $300.00 per month in child support, and $7,100.00 in attorney's fees. We modify the award of $1.00 per year in periodic maintenance and increase it to $200.00 per month, and affirm the remainder of the judgment.

Michael and Beverly Roark were married in 1969. At that time Michael had already received a medical degree and Beverly a nursing degree. Michael went on to obtain a speciality as an ophthalmologist. A child, Michelle, was born to the couple in May of 1978. The couple was permanently separated in 1981. Both parties have agreed that the marriage was irretrievably broken.

Michael Roark worked as an intern after medical school in 1969. From 1970–1971 he served with the military. In 1972, he returned to a residency program which he finished in 1975. In 1976, Michael entered solo practice in South St. Louis County. At this time a loan was signed by Michael and Beverly with Big Bend Bank in the amount of $50,000.00 in order to purchase medical equipment for Michael's practice. In 1978, Michael started working at St. Louis City Hospital as a supervisor on a part-time basis, 10 to 12 hours per week. In 1981, when he had over 5,000 patients and was grossing approximately $72,500.00 per year, Michael left private practice. Also at this time, he stopped making payments on the loan with Big Bend Bank. This loan was secured by a mortgage on their home. In 1982, Big Bend Bank foreclosed on the Roark's home in which Beverly was living at the time. Michael's explanation for leaving private practice was that his alcoholic habit was affecting his ability to perform surgery and that the net income of the practice ($11,879.63 in 1981) was not worth the amount of time the practice demanded.

In 1983 when the trial took place, Michael was working only the part-time job at St. Louis City Hospital earning $1,400 per month. Uncontradicted testimony at trial by an expert witness stated that the average ophthalmologist with Michael's schooling, experience, and specialty would earn $96,740.00 per year.

Beverly also worked while the couple was married. She worked in the capacity of a nurse from 1969–1973, and a nursing instructor from 1974–1978. She stopped working when Michelle was born in 1978, and started working again in 1982, after the separation. At the time of the trial in 1983, Beverly was making approximately $13,200.00 per year or $1,100.00 per month as a net salary.

From 1969 to 1979, Michael received $240.00 per month from a trust fund set up by his father. The monthly distribution increased to $325.00 per month during the last few years of the trust. Michael was also given stocks and bonds by his father prior to the marriage which were yielding approximately $1,650.00 per month in 1981 before they were sold. Michael was also given $4,000.00 as a Christmas gift from his father which was used to put a down payment on a GMC van in 1979. These gifts and other monies supplemented the income and subsequent standard of living of Michael and Beverly Roark during their marriage.

PERIODIC MAINTENANCE

■ The trial court awarded the appellant Beverly Ann Roark $1.00 per year periodic maintenance in addition to $10,-000.00 gross maintenance. It is proper for a court to award both periodic maintenance and maintenance in gross within the same award. *Phelps v. Phelps,* 620 S.W.2d 462, 465 (Mo.App.1981). Appellant contends that considering respondent's medical training and earning potential, the judgment was against the weight of the evidence and contrary to the case law.

In reviewing awards of maintenance, the appellant is subjected to a high standard: the trial court has broad discretion in determining the amount of maintenance and a reviewing court will not interfere absent abuse of discretion. *Colabianchi v. Colabianchi,* 646 S.W.2d 61, 66 (Mo. banc 1983). Under § 452.335 RSMo 1978, maintenance shall not be awarded unless the court finds that the spouse seeking maintenance (1) is unable to provide for his reasonable needs, or (2) is unable to support himself because of custody of a child whose condition makes it appropriate not to require the custodian to seek outside employment. The trial court in its findings of fact held that the wife was in need of periodic maintenance but limited it to $1.00 a year because it found the respondent was unable at that time to provide for his reasonable needs as well as that of appellant's.

■ However, a professional education is "in the nature of a 'financial resource' and a measure of 'ability' [to pay] and should not be lightly discounted." *In re Marriage of Vanet,* 544 S.W.2d 236, 242(6) (Mo.App.1976). Michael Roark is a medical doctor with a specialty in ophthalmology. In fixing a just amount of maintenance under § 452.335.2(6) RSMo 1978, ability to pay contemplates more than just present earnings, but also "prior and anticipated earning capacity." *In re Marriage of Vanet, supra* at 242(5). Michael Roark was only working 10–12 hours per week at the time of the trial. He testified that his present job does not prevent him from obtaining other employment. He further stated that his problem from alcohol had never caused him to be late for or miss work. Dr. Roark has been practicing in the field of ophthalmology for over ten years. Uncontradicted expert testimony at trial established that an average doctor of Michael's experience and training would make $96,740.00 per year. The evidence does not sustain a conclusion that Dr. Michael Roark's future earning capacity was only $16,800.00 per year. Rule 84.14 permits the appellate court to award or give judgment as the trial court ought to have given. Modification of a judgment by the appellate court is favorable where no further factual adjudication is necessary. *Steinmeyer v. Steinmeyer,* 669 S.W.2d 65, 68 (14, 15) (Mo.App.1984). Considering all the relevant factors under § 452.335 RSMo 1978, this court modifies the award of $1.00 per year periodic maintenance and finds that $200.00 per month is justified to provide for appellant's reasonable needs.

DIVISION OF MARITAL PROPERTY

The appellant advances two points with regard to division of marital property. Firstly, she asserts that Michael intentionally dissipated the marital assets, and that she should receive a award based on what the marital property would have been absent the intentional dissipation. "The Dissolution of Marriage Act leaves the division of marital property to the sound discretion of the trial court, and its decision should be upheld unless an abuse of discretion is shown." *Colabianchi v. Colabianchi,* 646 S.W.2d 61, 64 (Mo. banc 1983).

■ The appellant Beverly Ann Roark points specifically to the foreclosure on the couple's home after they were legally separated as evidence of intentional dissipation in contemplation of dissolution. Dr. Roark's testified that he possessed $33,-016.00 in June of 1982 through cashing securities which were his separate property. The home was foreclosed in December of 1982. Appellant cites the case of *Calia v. Calia,* 624 S.W.2d 870, 872 (Mo.App. 1981) for the proposition that where one spouse secretes or squanders marital property in anticipation of divorce, the court may order reimbursement. The case is fac-

tually distinguished from the case before us. In *Calia*, the husband had secretly emptied a bank account which had been awarded to the wife in the dissolution decree. There is no evidence in the record before us that Michael Roark secreted or squandered money. Furthermore, the $33,016.00 that appellant suggested should have been used to make payments on the loan, was separate property of Michael's and was completely expended for his living expenses by the time of the dissolution proceeding. Michael would not have been able to meet his living expenses and still repay the loan under his current income. This case does not support the above point of appellant.

Appellant's second point with regard to the division of marital property is that the trial court erred in not classifying Dr. Roark's medical training subsequent to marriage as marital property and failing to consider appellant's contribution to the acquisition of said training. The Roark's were married in 1969. At that time, Michael had already obtained his medical degree, but it was subsequent to the marriage that he gained the specialty in Ophthalmology.

Our courts do not declare an advanced educational degree to be marital property per se, but leave the trial court flexibility in striking a balance between husband and wife. *Scott v. Scott*, 645 S.W.2d 193, 197(7) (Mo.App.1982). Declaring the husband's medical degree to be marital property has been approved where it was necessary to reach an equitable result when one spouse forfeits his or her education to work and enables the other spouse to obtain an education. *In re Marriage of Dusing*, 654 S.W.2d 938, 946 (Mo. App.1983).

Such circumstances which require the classification of professional education as a marital asset are not present here. The husband had completed medical school by the time couple was married. The wife was not required to forego her education in order to support the family during the years of Michael's residency in Ophthalmology. Furthermore, during the period in which Michael was a resident, he contributed his salary as a resident and his trust income to family living expenses. This point is denied.

## ORDERED SALE OF ASSET

On cross-appeal, Michael Roark in his pro se brief raises the ordered sale of undivided marital property for the purpose of paying attorneys fees as error by the trial court. His brief gives cursory treatment to the point and summarily cites *Dickinson v. Dickinson*, 631 S.W.2d 61, 62 (Mo.App. 1982) in support of the contention. However, we find the GMC van that was ordered sold not to be undivided marital property. The proceeds from its sale go exclusively to the wife's attorneys or herself individually. Therefore, *Dickinson* does not apply to the facts of the instant case, thus the point is denied.

Michael Roark's final point on cross-appeal deals with the $1.00 per year periodic maintenance and is no longer applicable in light of our modification above of that award.

The judgment is modified by increasing the periodic maintenance from $1.00 per year to $200.00 per month. The remainder of the judgment is affirmed.

CRIST and CRANDALL, JJ., concur.