G.H. Terando, John Thomas Welch, Poplar Bluff, for petitioner-respondent.

David G. Neal, Eminence, for respondent-appellant.

---

## In re MARRIAGE OF Kenneth C. STUDYVIN and Pamela Lynn Studyvin.

### Kenneth C. Studyvin, Petitioner–Respondent,

### and

### Pamela Lynn Studyvin, Respondent–Appellant.

### No. 15901.

Missouri Court of Appeals, Southern District, Division Two.

Nov. 2, 1989.

PREWITT, Presiding Judge.

The parties were married on July 5, 1976, separated July 1, 1986, and judgment dissolving their marriage entered on August 11, 1988. Appellant contends that the trial court erred in its orders pertaining to property division; maintenance; child support; and attorney's fees.

Appellant's principal contention appears to be that she should have been allocated a fixed percentage of respondent's income because she contributed to respondent's medical training. Her brief states that respondent's "enhanced earning capacity" is a "marital asset for which Pamela is entitled to an accounting."

At the time of the marriage respondent was employed as a pharmacist. Appellant was unemployed, taking care of her ill mother. Appellant had attended college for one year and was trained as a dental

assistant. She also had other work experience.

Shortly after the marriage respondent was accepted by a medical school and began in the summer of 1977. He finished his classroom education in 1981 and worked as a medical resident until 1984. During respondent's medical education and residency appellant was employed. She also relieved respondent of any responsibilities in their residence. There was evidence that during this period respondent also worked, that he used some personal funds for their support and that he borrowed money through student loans.

Since the end of his residency respondent has worked as an emergency room physician. Respondent makes approximately $90,000 a year. In late winter or spring of 1986 respondent became romantically involved with one of his employees. In July 1986 he moved out of the house he occupied with appellant and their two children and moved in with that employee. The parties acquired marital property but it has little equity or value.

Missouri cases which have considered similar situations include *Roark v. Roark*, 694 S.W.2d 912 (Mo.App.1985); *In re Marriage of Dusing*, 654 S.W.2d 938 (Mo.App. 1983); *Scott v. Scott*, 645 S.W.2d 193 (Mo. App.1982); *Lowrey v. Lowrey*, 633 S.W.2d 157 (Mo.App.1982); and *In re Marriage of Vanet*, 544 S.W.2d 236 (Mo.App.1976).

In *Dusing* this district considered the wife's contention that the trial court erred in not declaring the husband's medical degree to be marital property, stating, 654 S.W.2d at 946:

> This viewpoint has been approved where it was necessary to reach an equitable result when one spouse forfeits his or her education to work and enable the other spouse to obtain an education. Annot., Marital Property—Professional Degree, 4 A.L.R.4th 1294 (1981). This reasoning has particular appeal when a spouse who has so benefited has attained an advanced education that yields a generous income. It is more appealing when that spouse's attraction to a third party leads to the termination of the marriage.

Perhaps the doctrine is but a shorthand expression of the action of a trial court, when there are sufficient marital assets, in recognizing the indirect contribution of a spouse to those assets.

*Scott*, 645 S.W.2d at 197, in discussing similar decisions, states that Missouri:

> courts have never attempted to pigeonhole a professional education degree as "marital property" nor has any court directed compensation by the lump sum maintenance approach or any other exclusive approach. Better to leave it that way. It is not necessary to hamstring our trial courts by confining them to a marital property theory or a lump sum maintenance theory, or any other particular approach. The courts are agreed that, in striking a balance between husband and wife, the husband's professional education, to which the wife contributed by earnings, gifts and privation, are to be taken into account. [citing cases] The trial courts have flexibility to fashion their decrees to meet the variety of circumstances presented by the cases.

These situations have also been the subject of comments in legal periodicals. See Herring, Divisibility of Advanced Degrees in Equitable Distribution States, 19 J. Marshall L.Rev. 1 (1985); Glover, Professional education as matrimonial property: Sullivan's Case Resolved? [1986] N.Z.L.J. 15; Krauskopf, Maintenance: A Decade of Development, 50 Mo.L.Rev. 259 (1985); Melville, Educational Degrees at Divorce: Toward an Educated Dissolution, 59 S.Cal.L. Rev. 1351 (1986); Mullenix, The Valuation of an Educational Degree at Divorce, 16 Loy.L.A.L.Rev. 227 (1983).

Appellant apparently did not, as discussed in *Dusing*, forfeit her education to work. She had already left college and until the parties separated had apparently not indicated any intention to return. However, she did work and apparently was the principal source of wages during the period that respondent was in medical school and made other sacrifices for that education. Although we do not view respondent's education as marital property, nor believe that appellant should get a

**340**

fixed part of his earning capacity indefinitely as she requests, we believe that respondent's earning capacity and appellant's contribution toward it is a matter to be considered.

Upon review of the record we are convinced that if appellant is sincere in her intention to return to college to become a lawyer or college professor, as she so testified, then she should be allowed to do so. The large debt that she received as a result of being awarded the family home might prevent her from being able to receive further education on the maintenance awarded of $1,471 a month. We determine that this award is inadequate and that the judgment should be modified by awarding appellant $1,971 per month for six years, thereafter to be $1,471 a month unless and until modified by court order. The increased maintenance shall be effective and payable from August 11, 1988, the date the judgment was entered. See *In re Marriage of Runez*, 666 S.W.2d 430, 434 (Mo.App.1983).

Among appellant's other points is the contention that the trial court erred in granting to respondent the income tax dependency exemption for the children. In *Corey v. Corey*, 712 S.W.2d 708, 710–711 (Mo.App.1986), the court indicated that it is appropriate for a court, in the absence of an agreement between the parties, to determine which party is entitled to income tax exemptions for their children. *A.V. v. G.V.*, 726 S.W.2d 782, 784–785 (Mo.App. 1987), determined that it was proper for a court to do so where the parties were not married.

Although acknowledging these cases, respondent's counsel with admirable candor states in respondent's brief that "the Appellant may very well be correct in her assertion of the Internal Revenue Code provisions. The Respondent is of the opinion that the most recent regulations available to Respondent as of the date of this Brief do not support the trial court's awarding the tax exemption to the Respondent." Accordingly, that portion of the judgment is also reversed.

We have considered appellant's other contentions but find no abuse of the trial court's discretion in the respects complained of.

The judgment is affirmed except for the award of maintenance and the granting of the tax exemption and in those particulars it is reversed. The cause is remanded to the trial court with directions that it amend its judgment to increase maintenance for a period of five years as above set forth and delete the granting of the income tax exemption. In all other respects the judgment is affirmed. Costs are divided equally among the parties.

HOGAN and MAUS, JJ., concur.