In re the MARRIAGE OF Harry Mack CORNELL, Jr., Petitioner-Respondent,

and

Shirley Frerer Cornell, Appellant.

No. 9979.

Missouri Court of Appeals, Springfield District.

March 28, 1977.

Motion for Rehearing or Transfer Denied April 27, 1977.

Application to Transfer Denied June 14, 1977.

---

2. Specifically, the trial court found the prosecutor's testimony to be creditable, and O'Neal's not worthy of belief.

**824**

---

William O. Russell, Joplin, for petitioner-respondent.

William C. Myers, Jr., Myers, Webster & Perry, Webb City, for appellant.

Before BILLINGS, C. J., and STONE and HOGAN, JJ.

BILLINGS, Chief Judge.

Dissolution of marriage proceeding. Issues presented by the wife's appeal are the lower court's division of marital property, the monthly maintenance award to the wife, and the amount of the monthly child support for a minor child. We reverse in part and remand with directions.

Harry and Shirley were married in 1948. During the following two years while he was completing his degree at the University of Missouri at Columbia, Shirley worked as a secretary and receptionist. After Harry's graduation in 1950 he went to work for Leggett & Platt, Inc., at its plant in Louisville, Kentucky. In 1953 he became manager of a Leggett & Platt plant in Ennis, Texas, and in that year the first of the parties' three daughters was born.

In 1958 or 1959 Harry and several associates formulated a plan to acquire control of the company which had its main office in Carthage, Missouri. The take-over plan succeeded and the family moved to Carthage in late 1959. Harry became president and chief operating officer of Leggett and Platt in 1960. From 1960 to 1974 the number of operating plants grew from three to thirty-two. The number of employees increased from 400 to 4500. Sales and profits dramatically increased. During 1972 and 1973, Harry grossed more than $100,000 from salary, bonuses, fees and dividends. His 1974 gross income totalled more than $140,000. During the years of marriage the parties accumulated sizeable real and personal assets.

Additional facts will be noted as specific points are discussed.

### Division of Property

In its division of property the circuit court first set aside to the wife her separate property, as required by § 452.330, RSMo Supp.1975.[1] This included a savings account of $4,468, a $5,000 certificate of deposit, 3999 shares of Leggett & Platt valued at $5.25 per share, and other stock worth $1,000. The total value of her separate property was $31,462.75. All other

---

1. All statutory references are to RSMo Supp. 1975.

property was held to be marital property[2] and was divided as shown below. Since the trial court made no findings concerning the values of the properties, the following illustrations set forth the valuations given by each party.

### Marital Property Awarded To Wife

| Asset | Wife's Valuation | Husband's Valuation |
|---|---|---|
| Home & residence property | $110,000.00 | $120,000.00 |
| Lake property | 15,000.00 | Same |
| Household furnishings | 5,000.00 | 20,000.00 |
| 1972 Buick LaSabre | 2,500.00 | Same |
| 462 shares of First National Charter at $42.25 | 19,519.50 | Same |
| 18,050 shares of L & P Investment Co. stock | 28,807.80 (at $1.596) | 8,664.00 (at $.48) |
| 150 shares of United Missouri Bank stock at $18.00 | 2,700.00 | Same |
| 300 shares of Ennis Business Forms at $5.00 | 1,500.00 | Same |
| Cemetery lot | 500.00 | Same |
| Broadview Country Club Stock | 125.00 | Same |
| 10,000 shares of Leggett & Platt at $5.25 | 52,500.00 | Same |
| TOTALS | $238,152.30 | $243,008.50 |
| Less: Mortgage on home | 38,681.08 | Same |
| NET VALUES | $199,471.22 | $204,327.42 |

### Marital Property Awarded to Husband

| Asset | Wife's Valuation | Husband's Valuation |
|---|---|---|
| 98,258 shares of Leggett & Platt at $5.25 | $515,854.50 | Same |
| Cash Value of life insurance | 7,000.00 | Same |
| Checking and savings account (value found by trial court) | 8,000.00 | Same |
| 20,911 shares of L & P Investment Co. | 33,373.96 (at $1.596) | 10,037.28 (at $.48) |
| One-fourth interest in Ford-Smallwood Partnership | 10,000.00 | Same |

2. Neither party contests the finding that the remaining property is marital property.

Marital Property Awarded to Husband—Continued

| Asset | Wife's Valuation | Husband's Valuation |
|---|---|---|
| Leggett & Platt Savings and Retirement Plan | 30,597.00 | 16,161.74 |
| Leggett & Platt Deferred Compensation Plan | -0- | -0- |
| Mark Twain Life Ins. Stock | -0- | -0- |
| TOTALS | $604,825.46 | $567,053.52 |

Less: Liabilities

| | | |
|---|---|---|
| Bank of Carthage | $84,950.00 | |
| United Missouri Bank | 42,000.00 | |
| Partnership debt | 6,393.75 | |

| | Wife's Valuation | Husband's Valuation |
|---|---|---|
| TOTAL DEBTS | 133,343.75 | Same |
| NET VALUE OF ASSETS | $471,481.71 | $433,709.77 |

Using the wife's values and deducting debts assigned to each party, the wife received about 29.7% of the marital property. Using the husband's values and again deducting debts, the wife received about 32% of the marital property.[3] She contends this was an inadequate share and that she should be awarded at least half of the marital property.

§ 452.330.1 lists four nonexclusive factors to consider in making a just division of the marital property. The legislature has left this matter to the sound discretion of the trial court and its decision should be upheld unless that discretion has been abused. *In Re Marriage of Vanet*, 544 S.W.2d 236, 240 (Mo.App.1976); *In Re Marriage of Simpelo*, 542 S.W.2d 558, 561 (Mo. App.1976). The statute requires that there be a *just* division of the marital property; it does not require that there be an *equal* division in every case. *In Re Marriage of B. K. S. and D. D. S.*, 535 S.W.2d 534, 536 (Mo.App.1976); *Conrad v. Bowers*, 533 S.W.2d 614 (Mo.App.1975).

The first factor under § 452.330.1 is "[t]he contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as [a] homemaker." Although the husband was the obvious breadwinner and his efforts at Leggett & Platt were the primary source of the family's wealth, the statute also requires recognition of the wife's role as a mother and homemaker. *Cain v. Cain*, 536 S.W.2d 866, 874 (Mo.App.1976). Also not to be ignored is the fact Shirley worked for two years to support the family while Harry completed his college education. *In Re Marriage of Vanet*, supra, 544 S.W.2d at 241.

The second consideration is the value of the property set apart to each spouse. As stated earlier, the wife was awarded separate property worth about $31,500. This is a rather insignificant amount in comparison with the marital property involved, but it does increase the net value of all property (marital and separate) received by Shirley to approximately $230–$236,000, depending upon how the properties are valued.

The next factor, the economic circumstances of the parties, has been briefly discussed above. Harry, age 46 at time of

3. If the total values of the assets are used with no deductions for the debts assigned to the parties, the wife received about 28.3% of the marital property under her valuations and about 30% under the husband's valuations.

trial, has a lucrative position with Leggett & Platt and had earned over $100,000 in each of the three years prior to trial. Shirley was 45 years old and had not worked since 1953, having devoted her time to motherhood, household, civic, and social functions.

The final factor listed under § 452.330 is the conduct of the parties. Harry and Shirley first separated in October of 1971 when he moved out of the home and took an apartment. After a two-month reconciliation from January 1, 1972, to March 2, 1972, Harry again left the home and the parties have lived apart since. Harry admitted that after each separation he engaged in adulterous relationships with Ann, a recently divorced woman, and later began to live with Ann in her home in Joplin.

Although Ann helped Harry find an apartment in the same complex in which she lived and Harry admitted he began to have intercourse with her within thirty days after he first left Shirley, he denied any involvement with her prior to this time. Shirley believed otherwise. In any event, after he and Shirley separated, Harry began to give Ann and her children money, jewelry, and other gifts, including stock worth $18,000 which Ann liquidated and applied toward the purchase of a new home. He also gave her a piece of realty in which he had invested over $8,000. In addition, he and Ann made many out-of-town trips together. Harry testified he planned to marry Ann after his divorce from Shirley.

Harry blamed the marital break-up upon Shirley's smoking habit, saying it disgusted him and her refusal to quit finally caused him to become impotent. He also voiced complaints that Shirley was often cold and indifferent and rejected his amorous advances. Shirley denied all these allegations, including the seriousness of her smoking, and claimed she quit before the first separation and did not resume smoking until after the reconciliation attempt failed. In regard to the smoking allegations, Harry admitted that when he first began seeing Ann she was an "occasional smoker" but claimed she "stopped immediately."

Considering the conduct of the parties and the other factors enumerated by statute, we are forced to the conclusion that the trial court abused its discretion in awarding Harry approximately 70% of the marital property.[4] We find no disparity in the contributions of Harry as the breadwinner and Shirley as mother and homemaker. There is a substantial disparity in the economic circumstances of the parties. Finally, on the question of the conduct of the parties, the evidence warrants a finding that Harry's extra-marital activities with Ann were a major factor in the shipwreck of a twenty-six year marriage upon the rock of dissolution.

§ 452.330 calls for a *just* division of the marital property after considering all relevant factors. In our opinion, and we so hold, the trial court's decree failed to meet that standard in the division of marital property. Under prior law the parties would have become tenants in common of jointly owned property at divorce. Professor Krauskopf [A Theory For "Just" Division of Marital Property In Missouri, 41 Mo.L.Rev. 165 (1976)] suggests the background for § 452.330 reveals two major guiding principles inherent in the statute: "first, property division should reflect the concept of marriage as a shared enterprise similar to a partnership; and, second, property division should be utilized as a means of providing future support for an economically dependent spouse." 41 Mo.L.Rev. at 165.

We recognize there is no pat formula to be followed in the division of marital property and what may seem *just* in one case may be unjust in another. Nevertheless, applying § 452.330 to the facts and circumstances of this case, we believe that to reach a *just* division of the property accu-

4. According to net worth statements prepared by Harry and received as exhibits, reflecting assets owned jointly and individually, approximately five-eighth's of the more than $800,000 combined net worth of the couple was jointly owned.

mulated by the parties to this marriage the lower court's order of division must be modified by increasing the number of shares of Leggett & Platt stock to Shirley by 20,597 shares and reducing the number of shares of said stock awarded to Harry by a like amount. Of the marital property Shirley will then have 30,597 shares of the Leggett & Platt stock and Harry will have 77,661 shares. Taking the agreed values of the properties listed earlier and averaging the few disputed values, the award of these additional shares to Shirley, together with her non-marital property, will result in a total net value to Shirley of $322,760.67 and a total net value to Harry of $322,756.50.[5] The remainder of the division of marital property is affirmed.

### Maintenance Award

■ On the issue of maintenance for Shirley the trial court made the following order:

"The petitioner [husband] shall pay to the Respondent [wife] the sum of $1,700.00 per month as and for her maintenance for a period of twelve (12) years; and thereafter the sum of $1,200.00 per month for a period of five (5) years; and thereafter the sum of $600.00 per month for a period of five (5) years, at the end of which time maintenance payments shall terminate."

\* \* \* \* \* \*

"The foregoing order for maintenance for the first twelve years in the amount of $1,700.00 per month is made by the Court assuming that Respondent chooses to live in the matrimonial home which the Court has awarded to her, and if she chooses not to do so, then the Court being advised of the disposition of the matrimonial home and the removal therefrom of the Respondent and the child, Kathy, the Court would on its own motion reduce the monthly payments from $1,700.00 to a

sum that would be appropriate under the circumstances that would then and there exist upon Respondent's moving from the matrimonial home."

Shirley contends the initial $1,700 monthly award and future reduction thereof is inadequate, unjust, and erroneous. She requests a sum of not less than $2,878 per month with no provision for decreasing or terminating maintenance in the future.

In answer to interrogatories Shirley stated basic expenses were about $17,000 in 1971 and $21,000 in 1972. Her trial exhibit showed home and household expenses for the years 1972–74 ranged from $27,000 to $34,000. Another trial schedule of estimated maintenance expenses required by Shirley and her minor daughter projected annual expenses of $38,000.

Admittedly, the parties established a high standard of living during the marriage. However, there was no clear proof of what sums Shirley needed to maintain herself in a similar manner, and we believe a $1,700 monthly award is supported by the evidence. § 452.335 enumerates seven factors to consider in arriving at a just maintenance award and most of these have been touched upon in our discussion concerning the division of marital property. Further, our modification of the division of marital property is a factor for consideration in reviewing this issue and we affirm the $1,700 monthly award to Shirley for maintenance.

The trial court fell into error in "stairstepping" the maintenance award. § 452.-335 provides that the "maintenance order shall be . . . for such periods of time as the court deems just . . . ." *In Re Marriage of Powers*, 527 S.W.2d 949 (Mo. App.1975) recognized that this language authorizes the trial court to make maintenance awards of limited duration, but held such awards must be based not upon mere speculation but upon some evidence of a change in the financial conditions of the

5. These computations exclude the L & P Investment Co., stock and the disputed values assigned thereto by the parties. The court awarded 18,050 shares to Shirley and 20,911 shares to Harry.

parties. 527 S.W.2d at 956. In *LoPiccolo v. LoPiccolo*, 547 S.W.2d 501 (Mo.App.1977) (Filed February 15, 1977), the court said, 547 S.W.2d at 505:

"If the evidence indicates that the dependent spouse's financial prospects will not improve dramatically in the future and the means of the spouse providing maintenance are not likely to decrease in the future, the trial court abuses its discretion when it speculates that the original maintenance award will no longer be required in the future. *In Re Marriage of Powers, supra* at 955. Maintenance should not be prospectively decreased or terminated if there is no evidence or reasonable expectation that the circumstances of the parties will be markedly different in [the] future."

Here, there was no evidence or reasonable expectation that the circumstances of Shirley and Harry will be markedly different in 12 years, 17 years, or 22 years. Future conditions and circumstances of the parties may well necessitate a revision of the maintenance order in years to come, but any such revision or modification is to be based on evidence, not speculation or conjecture. The "stair-stepping" provision for decreasing or terminating the award is ordered set aside. See *In Re Marriage of Valleroy*, 548 S.W.2d 857 (Mo.App.1977) (Filed March 15, 1977).

### Child Support

 Three daughters were born of the marriage. The two oldest were of age and pursuing careers at the time of trial. Kathy, age 15 and a sophomore in high school, resided with and her general custody was vested in her mother. The trial judge ordered the father to pay child support of $250 monthly.

We have reviewed the evidence on the question of support for the minor child in light of the six factors enumerated in § 452.340 and have concluded that the award is not so inadequate as to constitute an abuse of discretion by the trial court. The decree in that respect is affirmed.

The judgment is reversed in part and the cause remanded for further proceedings consistent with this opinion.

All concur, except TITUS and FLANIGAN, JJ., not participating.