**In re the Marriage of L. J. SPICER,
Petitioner-Respondent,**

v.

**Pauline G. SPICER,
Respondent-Appellant.**

**No. 10398.**

Missouri Court of Appeals,
Southern District,
Division Two.

June 15, 1979.

Motion for Rehearing or Transfer
Denied July 2, 1979.

Application to Transfer Denied
Sept. 11, 1979.

William C. Myers, Jr., Julian J. Ossman, Myers, Perry, Ossman & Copeland, Webb City, for respondent-appellant.

C. E. Ruyle, Ruyle & Sims, Neosho, for petitioner-respondent.

HOGAN, Judge.

In this dissolution of marriage case, appeal is taken from that part of the decree apportioning marital property.

The petitioner and respondent, to whom we shall refer as the husband and the wife, were married in 1948 and were separated finally in 1975. The husband adopted the wife's daughter by a former marriage, and during their marriage of nearly 27 years, the parties became the parents of three

sons. The children are adults; the youngest son was 22 years of age when this action was commenced.

By petition and answer filed, both parties alleged irretrievable breakdown of their marriage, for different reasons. The trial court's findings faithfully recite the gradual deterioration of the parties' domestic relation, their efforts to accommodate or resolve their differences, and the ultimate failure of those efforts. We cordially agree with the trial court's finding that the marriage is irretrievably broken.

As noted, the focus of the appeal is upon the apportionment of marital property. It was agreed in the trial court and stipulated here on oral argument that all the parties' assets are marital property within the meaning of § 452.330(2), RSMo (Supp.1975). The parties differ as to the value of the marital estate, but inasmuch as we have concluded we cannot resolve this appeal on its merits, we need not discuss those differences. The valuation relied on by the trial court appears here as the husband's exhibit 8. Exhibit 8 is a schedule of the parties' assets and liabilities prepared by a tax attorney, who is also a certified public accountant, on the basis of the husband's testimony and, apparently, information furnished by the husband before trial. Exhibit 8 shows that at trial time, the marital estate consisted of 11 parcels of real property valued at $1,295,000, subject to encumbrances totalling $637,172. The estate also includes tangible and intangible personal property, excluding household effects, valued at $609,561, subject to encumbrances amounting to $101,416. If one includes some joint liabilities immediately due and payable at trial time, household furnishings and one item amounting to $1,750 which admittedly belongs to one of the children, the total net value of the marital estate is $1,164,096.

For our purposes, it is important to notice two or three other factual aspects of the case. The parties' most valuable assets, with a few exceptions, consist of business assets, most of which are encumbered and which will require careful management by some person with business experience. One item included as a substantial part of the marital estate is a tract of land and a building thereon which is occupied by Spicer Chevrolet-Olds, Inc., an automobile agency which has been the parties' principal source of income. The agency property is valued at $200,000, subject to an encumbrance in the amount of $72,025. The husband's interest in the agency is valued at $390,000, subject to an encumbrance in the amount of $101,416. The husband has been selling new and used automobiles for many years; the wife has had little or no connection with the operation of the agency.

Another item, in which the wife expressed interest and stated she would like to have awarded to her, is referred to as the "Consumers Building." The wife seems to regard the "Consumers Building" as an uncomplicated and secure source of revenue but that is simply not the case. The building itself is a 31,000 square foot structure which is leased to a local retail grocery chain. Examination of the lease reveals that it is primarily a credit instrument, designed to provide the assurance of a high-credit tenant as an inducement to make a real estate loan and as an assurance of a cash flow sufficient to service the mortgage debt. The lease provides for an "override" (ground rent) probably sufficient to discharge the husband's (lessor's) obligation to maintain, insure and pay taxes on the building and adjacent realty. The lease further includes a percentage rental provision intended as a hedge against inflation, but the mortgage debt will not be fully amortized until 1994 at which time the parties will be nearly 70 years of age. If there is no change in patterns of merchandising nor any shift in the area of retail activity, the investment in the "Consumers property" may become a source of secure fixed return, but in any event careful supervision and management of the property will be required.

Other tracts of real property are included in the marital estate; some have been developed, others are subject to potential development. All the real property, however,

will require maintenance and further investment if its value is to be preserved. There are, to be sure, liquid assets in the estate, in particular a savings account in the Bank of Neosho in the amount of $42,513 and a time deposit at the First National Bank in the amount of $38,599, but we shall address those liquid assets presently.

The husband had evidence from a tax attorney that capital gains tax upon the entire marital estate, were it liquidated and sold, would reduce the net value of the marital estate from $1,164,000 to $900,000. Transferring the "Consumers property" to the wife would alone result in an additional federal and state tax liability of $77,507. Computations pertaining to other listed items were presented; the substance of the tax attorney's testimony was that any substantial distribution of the marital estate in kind would diminish the estate considerably because of increased tax liability.

One other factual aspect of the cause should be noted. At trial time, the husband was 51 years of age. We find no specific testimony concerning his health, but he appears to be extraversive, acquisitive and singlemindedly devoted to his business interests. He has attended to the parties' business affairs at all times during their marriage. The wife is 52 years of age; she is well educated, but has spent 27 years as a full-time wife and mother. She has little business experience, and her health is, to some degree, impaired by a persistent back ailment. The wife has some ability to work and earn, but the maximum salary she could expect to receive is about $400 per month. The wife has been obliged to look after her parents, who are old and very ill, and she believes she could not accept full-time employment without neglecting her duty to her parents. As for the "conduct of the parties during the marriage"—one of the factors bearing upon an equitable distribution of marital property, § 452.330(1), (4), RSMo (Supp.1975)—we have set aside any consideration of "fault" in this case. The

wife complained that the husband has been inattentive, insensitive and given to coarse speech; the husband had evidence that the wife has been a most indifferent housekeeper, that she has on occasion been rude or ungracious on important social occasions, and has persistently made officious suggestions concerning matters of which she has no real knowledge. Such may be the case, but there is no convincing proof of cruelty, neglect or open adultery on the part of either party, and in any marriage of 27 years, there is fault enough—of the order proved here—to go around.

■ The trial court's order and decree may be briefly summarized. In essence, the trial court balanced the equities by awarding the wife the home, household furnishings and $1,725 per month as maintenance; all other marital property was awarded to the husband. The husband was ordered to assume all encumbrances on the marital estate. The trial court's intent is manifest, but an award of maintenance cannot be substituted for a spouse's share of the marital estate. For that reason, the submission must be set aside and the cause must be remanded.

■ A preliminary matter, which we address to avoid misunderstanding upon remand, is whether § 452.330, RSMo (Supp. 1975), authorizes the trial court to apportion marital property by making an award of cash in the nature of an annuity.[1] Because § 452.330, RSMo (Supp.1975), is taken from § 307 of the 1970 draft of the Uniform Marriage and Divorce Act, we must look to the intent of the commissioners who drafted the act to determine the intent of our statute. *State v. Anderson,* 515 S.W.2d 534, 539[5] (Mo.banc 1974). In *Claunch v. Claunch,* 525 S.W.2d 788, 791 (Mo.App.1975), it was held that a court might order payment of cash in lieu of a division of marital property in kind, but that decision does not quite reach the question we have here.

---

1. We use the noun "annuity" here in its "popular" rather than its technical sense, i. e., to mean a sum of money receivable at stated periods. See: *Wiegand v. Woerner,* 155 Mo. App. 227, 254–255, 134 S.W. 596, 605 (1911); *In re Brown's Estate,* 25 Misc.2d 656, 205 N.Y. S.2d 532, 534[1] (1960).

Nevertheless, the trial court must be allowed considerable latitude in dividing marital property, and a reasonable research into the decisions of other states which have adopted substantial equivalents of § 307 of the Uniform Marriage and Divorce Act, 9 U.L.A. at 490–491 (Master ed. 1973), which is the prototype for our § 452.330, RSMo (Supp.1975), convinces us that when the marital estate is a *business* estate, and its division in kind or forced liquidation would materially depreciate its value and could destroy the basis of the husband's earning capacity, a wife may be allowed the value of her share of the marital property in cash, payable either as a gross amount or in installments. See, e. g., *In re Marriage of Harding*, 533 P.2d 947 (Colo.App.1975); *In re Marriage of Johnsrud*, 572 P.2d 902 (Mont.1978). In this case, it could reasonably be found that a division of marital property in kind might consume a considerable part of the marital estate in capital gains tax; a significant investment, the "Consumers property", might disappear entirely and it is likely that the husband's capacity to earn would be substantially impaired. And, while it is not necessary to our holding, we may say that we have no fault to find with valuing a series of periodic payments as an annuity would be valued, as the husband suggests. We will say, for whatever guidance it may offer a respected colleague of many years, that we believe *some* award of the parties' liquid assets— exhibit 8 shows a passbook savings account in the amount of $42,513 and a time deposit in the amount of $38,599—should be made to the wife so she may to some extent insulate herself against the declining value of money. Moreover, the purported award takes no account of the possibility that the husband may predecease the wife; the husband's maintenance of a life insurance policy payable to the wife would provide for such a contingency.

■ Such suggestions are only suggestions, however, for we cannot decide this appeal on its merits. With deference, it appears that the trial court has erroneously assumed that an award of maintenance may offset or stand in lieu of an equitable apportionment of marital property. That is not the intent of the statute. Our § 452.-330, RSMo (Supp.1975), which requires apportionment of marital property, is taken from § 307 of the original Uniform Marriage and Divorce Act. Section 452.335, RSMo (Supp.1975), is taken from § 308 (maintenance) of the same uniform act. The commissioner's comment upon § 308, 9 U.L.A. at 494, reads:

> ". . . [T]he dual intention of this section and Section 307 is to encourage the court to provide for the financial needs of the spouses by property disposition rather than by an award of maintenance. *Only if the available property is insufficient for the purpose* and if the spouse who seeks maintenance is unable to secure employment appropriate to his skills . . . or is occupied with child care may an award of maintenance be ordered." (our emphasis).

Clearly it is the duty of the trial court to make an equitable distribution of the marital property before the matter of maintenance is considered. If, after the marital estate is apportioned, a spouse's future needs cannot be met by his or her property distribution, then a petitioning spouse is entitled to maintenance if he or she fulfills the requirement of § 452.335(1). Such is the plain requirement of §§ 452.330 and 452.335, RSMo (Supp.1975), when the two are read together. *In re Marriage of Johnsrud*, supra, 572 P.2d at 905[1].

In the case before us, no consideration appears to have been given to an award of maintenance. Indeed, upon the evidence presented, no award of maintenance could have been made. Absent evidence of the wife's needs, there was no basis upon which to fix an amount. The wife testified that the husband paid all the household bills, part of her clothing bills, and she received a "spending money allowance" of $620. There is other testimony concerning the wife's expenditures, but we find no evidence concerning her actual needs.

■ Since our Dissolution of Marriage law was enacted, our courts have insisted

that a proceeding for dissolution be fully adjudicated before it will be reviewed on appeal. See, e. g., *L.F.H. v. R.L.H.,* 543 S.W.2d 520, 521[1] (Mo.App.1976). The operative principle is that we may not exercise our jurisdiction until there has been a final adjudication of all the parties' rights in the trial court. *Pendleton v. Pendleton,* 532 S.W.2d 905, 906[3] (Mo.App.1976); *Green v. Green,* 240 S.W.2d 741, 742–743[3, 4], [5–7] (Mo.App.1951). Accordingly, the submission is set aside and the cause is remanded to the trial court with directions to hear evidence concerning the wife's need for maintenance and such other evidence as it may, in its discretion, consider necessary to render a final judgment.

BILLINGS, C. J., concurs.

YEAMAN, CONLEY and RAGLAND, Special Judges, concur.

MAUS, J., not participating because not a member of the court when case was submitted.