**In re the MARRIAGE OF Linda Mae EAST and Joel Sherman East.**

**Linda Mae EAST, Petitioner-Appellant,**

v.

**Joel Sherman EAST, Respondent.**

**No. 14027.**

Missouri Court of Appeals,
Southern District,
Division One.

April 14, 1986.

Motion for Rehearing or to Transfer to Supreme Court Denied May 1, 1986.

Samuel J. Short, Stockton, for petitioner-appellant.

George D. Nichols, Lamar, for respondent.

TITUS, Presiding Judge.

The parties were married April 8, 1967, and separated some 16 years later on August 10, 1983. A petition for dissolution of marriage was filed by the wife on August 12, 1983. Two children, 11 and 13 years of age at trial on February 17, 1984, were born of the marriage. On the day of trial the court made an interlocutory order dissolving the marriage and granting the wife, as agreed, custody of the children subject to reasonable visitation rights by the husband. In the subsequent final decree, the court divided the marital assets and liabilities between the parties, denied the wife maintenance and attorney fees, and ordered the husband to pay the wife

child support of $45.65 per month per child which was subsequently amended to $60.00 per month per child. The wife appealed contending the trial court erred by failing to award her a fair share of the marital property, by improperly crediting the husband with averred debts owing to members of his family, and by awarding her insufficient child support and denying her maintenance and attorney fees.

1. In a proceeding for dissolution of marriage ... the court shall set apart to each spouse his property and shall divide the marital property in such proportions as the court deems just after considering all relevant factors including:

(1) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;

(2) The value of the property set apart to each spouse;

(3) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children; and

(4) The conduct of the parties during the marriage.

§ 452.330.[1] "The Dissolution of Marriage Act leaves the division of marital property to the sound discretion of the trial court, and its decision should be upheld unless an abuse of discretion is shown. *In re Marriage of Cornell*, 550 S.W.2d 823, 826 (Mo. App.1977)." *Colabianchi v. Colabianchi*, 646 S.W.2d 61, 64[3] (Mo. banc 1983).

It was stipulated at trial "that all property owned by the parties, either separately or jointly, is marital property." The parties also stipulated the Greenfield residential property, not used by either as a residence, had a value of $27,500 subject to a bank's first deed of trust which secured a note with a balance then due of $12,700 payable at $167.50 per month. This property, via a May 1978 deed, was conveyed to

"Eva F. East, a single person; Joel S. East and Linda East, husband and wife." Eva East is the mother of the husband herein. The trial court later calculated the husband and wife took one share of the property in a tenancy by the entirety while the husband's mother held the other share as a tenant in common or joint tenant with the married couple. *Nelson v. Hotchkiss*, 601 S.W.2d 14, 18[2] (Mo. banc 1980). The undivided half interest belonging to the parties hereto was later valued at $13,750 by the court.

The parties further agreed that they, as husband and wife, owned a business building in Greenfield valued at $22,500 which was free and clear of any liens or encumbrances. They also stipulated the parties owned a business, known as the Greenfield Recreation & Cafe, having an agreed value of $15,000 subject to a security interest in favor of Eva F. East with "a present balance of $21,410 plus interest accrued amounting to $10,664.62 and the interest is accruing on that note at the rate of $5.72 per day."

In the decree of dissolution the court awarded the husband marital real and personal property which it valued at $53,350. This included, inter alia, all of the real estate and the pool hall and restaurant equipment noted above. On the other hand, the court awarded the wife personal property which it declared had a net value of $8,920. The property awarded the wife consisted of a 1963 model automobile, a horse, a pony, three beagle dogs, three saddles, horse tack, tools, furniture, household goods, personal clothing and jewelry. With the exception of the furniture and household goods which the court and husband valued at $6,000 (compared to the wife's value of $600), the net value of all property awarded the wife was $2,920.

The trial court supposedly compensated for the disproportionate division of the marital property between the husband and wife by ordering the husband to pay marital debts of $96,374.38, thereby theoretical-

**1.** Unless otherwise stated all references to statutes are to RSMo Cum.Supp.1984, and the rule reference is to Missouri Rules of Court, V.A. M.R.

ly imposing a net debt of $43,024.38 upon the husband. In listing the marital obligations to be paid by the husband, the trial court noted the indebtedness on the Greenfield residential property owing the bank to be $12,771.63 but divided this by half because of the title to the property, thereby rendering the husband's net obligation to the bank to be $6,385.82. However, among the total sum of $40,548.94 in *unsecured indebtedness* said to be owing by the husband to his mother, Eva F. East, are sums totaling $5,694.30. This total consists of $1,938.42 allegedly paid by Mrs. East in remodeling the Greenfield residential property, and $3,755.88 expended by Mrs. East in making 36 promissory note payments of $99.33 each and one note interest payment of $180 to the bank. As a tenant in common or joint tenant, such as Mrs. East, who pays encumbrances or debts on the common estate, she is ordinarily entitled in equity to contribution from her cotenants in proportion to their respective shares. 86 C.J.S. *Tenancy in Common,* § 66.a(1) (1954). Consequently, it seems incorrect to give Mrs. East 100% credit for the $5,694.30 she paid when her cotenants were only responsible for their half thereof.

In figuring the husband's assets and obligations the trial court apparently took no notice of the potentials it endowed by awarding unto him sole title to all substantial marital property, real and personal. E.g., assume the husband's interest in the residential property was worth $13,750, as valued by the court, and his presumed personal obligation thereon to the bank was $6,385.82. Without considering any increase in net value due the husband because of inflation or subsequent installment note payments, the husband would net approximately $7,365 upon the sale of that property. The sale of the unencumbered business real estate, valued at $22,500, would bring the income from real estate sales to some $30,000. If the "Pool Hall and equipment," as found by the court, had a value of $15,000, the sale thereof, coupled with the income from the sale of the real estate, would make a total realization from sales of about $45,000, and

would make a substantial reduction in the debts theoretically imposed upon the husband.

Ignoring for the moment the sale of the property in calculating the purported obligations to be paid by the husband, the trial court apparently ignored the income which the husband alone realized from renting the real estate and business equipment. The undisputed evidence was that the husband had taken exclusive possession of such property when the parties separated August 12, 1983, and had thereafter been the single recipient of the income derived therefrom. The residential property was rented at $184 per month and if, as indicated, $167.50 thereof was used to make monthly payments to the bank, the net rental income to the husband would be $16.50 per month. In addition, the husband's net ownership percentage in the residential property would increase with each monthly payment to the bank. The business building and equipment given the husband were rented for $250 per month less $35 to $60 per month he paid therefrom for utility services. Thus his net income from that portion of the building varied from $190 to $215 per month. In addition, two upstairs apartments in the business building had a total rental value of $250 a month, thereby giving the husband potential monthly net income from rent on all his rental properties of approximately $440 to $465 or a yearly average income of $5,430. Furthermore, upon discharge of the bank note the husband's net annual income from rent would increase $2,010, giving him approximately a total net yearly rent income of $7,440.

To further confuse the matter the trial court, as above noted, declared the husband's undivided one-half interest in the residential property to be worth $13,750. However, the testimony of Eva F. East, the husband's mother, was to the effect her name appeared on the deed-title thereto as security for the $5,694.30 in advances she made in remodeling costs and in making note and interest payments. But this seems strange because these so-called "ad-

vances" were made well subsequent to the deed. Mrs. East moreover stated she considered the residential property to be that of her son and his wife upon repayment to her of those sums. Ergo, if Mrs. East were to follow her avowed intentions, upon being reimbursed $5,694.30, the husband, her son, would ultimately solely own real estate valued at $27,500 which would further put awry our prior computations and those of the trial court. Moreover, as to all secured and unsecured indebtednesses said to be owed Mrs. East as considered by the trial court in figuring the obligations to be paid by the husband, when asked if she ever made any demand on the daughter-in-law for payment thereof, Mrs. East testified: "No. I expected they'd pay it if they ever got any money." This was corroborated by the husband who testified his mother had never made "exact demands" for payment of any of these debts.

At the time of trial on February 17, 1984, the husband was employed by a cheese company and his expected "net earnings will be approximately $250 every two weeks" compared to the wife's then net earnings for a like period of $239 from a garment manufacturing concern. When the husband's net income of a little in excess of $500 a month is coupled with rent income as above noted, the husband's net monthly income would total roughly $1,000. The only for-certain family obligation of the husband was to pay $120 a month child support which would give him an approximate net monthly income of $880. Apparently in an effort to bemuse the simple arithmetic associated with such figuring, the husband testified as to his monthly living expenses which totaled $400. However, included in such total was said to be $150 monthly rent he paid his mother for residing in a mobile home on her property, albeit he admitted such supposed rental payments were seldom, if ever made. Also included in such $400 was a claim of $100 per month for "utilities" without any explanation as to whether this was incurred wholly at the trailer or included the $35 to $60 per month paid for utilities in the business building which has already been considered in our prior computations.

In considering the contributions of each spouse to the acquisition of the marital property, not to be ignored is the fact that the wife, in addition to being a homemaker and a mother, had an extensive history of having worked outside the home and contributing to the family income. Following the April 1967 marriage the wife was employed three or four months in a cafe and was then unemployed until the couple moved to California where she worked "several months" in a dry cleaning establishment. Upon returning to Missouri, the wife was employed in Springfield for a year before working in Lockwood some 19 months until the couple acquired the Greenfield Recreation & Cafe; she worked there seven years as a cook, waitress, and dishwasher until the couple separated. At times when not formally employed, the wife "babysitted." We also assume it was not feasible for her to be employed outside the home while she was birthing and nurturing her two children. Assuredly the husband worked and contributed substantially to the family income. As testified by the wife without contradiction by the husband, his conduct in the later years of their relationship contributed heavily to the ultimate separation of the parties. The husband acknowledged his drinking created problems in the marriage and the wife testified he "drank a lot, wasn't home, he would stay out late at nights. Sometimes when he'd came in, we'd fight. And on occasions he has hit me." The wife indicated her husband became more aware of this conduct over the years but he continued to do it anyway. It culminated August 10, 1983 (the date of final separation), when he "came in about 1:30, 2:00 o'clock and we got into a fight.... He slapped me and said he was moving out and we were getting a divorce." To apparently further finalize the separation, before the dissolution hearing on February 17, 1984, the husband publicly announced his engagement to be married to a woman unto whom he had bestowed presents, given a diamond engagement ring, and entertained at dinners.

Before leaving the individual credits, liabilities and obligations of the parties, we look at the wife's situation (1) subsequent to the separation when she received very little, if any, financial assistance from the husband, and (2) subsequent to the final decree of the trial court entered more than a year later. Predicated on the only evidence thereof at trial, the wife's net earnings at trial time were $239 every two weeks. Adding thereto the child support of $120 per month for two children would give the wife a monthly income of about $600. The wife's estimate of the monthly living expenses, for her three-member family, of $822 (including rent $150, food $260, utilities $60, medical expenses $10, haircuts $12, taxes $20, automobile $220, recreation $30, school supplies $10 and clothing $50) would net her a monthly deficit of over $200 without allowing for emergency expenses.

As it was stipulated "that all property owned by the parties ... is marital property," there was no separate property to be set aside to the husband or the wife. Marital property is to be divided in such portions as is just considering all relevant factors including the four statutory factors set forth in § 452.330.1.

In re the first factor: There was virtually no evidence establishing the individual assets of the parties used in acquiring the initial marital properties owned by them. The marital properties with which we are concerned were first acquired some 10 or 11 years after the parties were married. These were obtained, in part, through the sale or disposition of other marital property which the parties had acquired during the first decade of their marriage. The marital "residential" property with an agreed value of $27,500, was acquired via a May 1978 deed and attained this agreed value in February 1984 only after the husband and wife, individually and collectively, had expended considerable time, effort, labor and money in enhancing its value. As noted, the wife not only performed the well-known duties of a mother, but also employed her efforts before and after the acquisition of the "residential" property in augmenting the family income and in substantially increasing the value of said property. The same may be said of the wife's efforts in the acquiring by the couple of the ownership of the business building and their ownership of the Greenfield Recreation & Cafe. Albeit the fiscal and physical contributions of the husband and the wife were given no specific individual monetary values, it cannot be ignored that the contribution of each was substantial. When such contributions of the wife are coupled with those she obviously rendered as a homemaker, we would probably show imprudence by declaring the contributions of the spouses to be equal.

As to § 452.330.1(2), the utter imbalance of the "value of the property set apart to each spouse" cannot be denied or ignored where the marital property given the husband was valued at $53,350 while that awarded the wife had disputed values with at most a net worth of $8,920. The properties awarded the husband were capable of producing income, and the sale thereof would endow him with some $45,000. On the other hand, the nature of the property awarded the wife gave it virtually no income producing capabilities. If sold for the values placed thereon by the trial court, it would not only leave the wife and children stripped of essentials but would necessitate their repurchasing the same or similar items, which probably could not be accomplished by the funds they might receive from a forced sale.

The desirability of awarding the family home or right to live therein to the wife having custody of the two children, is an avoidable question as there was no "family home." The "residential" property owned, at least in part, by the husband and wife was rented to third persons and the rental income therefrom went wholly to the husband. This left the wife with the obligation of paying monthly rental of $150 to provide a home and shelter for herself and children. As to § 452.330.1(3), little more can be said about the gross inferior economic circumstances of the wife at the time

of the division of the property as decreed by the trial court.

Likewise, nothing more can be noted concerning § 452.330.1(4) regarding the conduct of the parties during the marriage. While the wife's deportment may not have attained absolute perfection, there is no hint of marital misconduct on her part nor any suggestion of neglect of her wifely and motherly duties or lack of care and concern for the members of her family. The husband's own admissions, augmented by the wife's testimony, showed him guilty of marital misconduct which has often been held to support a division of marital property substantially favoring the wife. *Gray v. Gray*, 654 S.W.2d 309, 312[4] (Mo.App. 1983).

■ In our review of this court-tried case, we are mindful the judgment of the court nisi must be affirmed unless it is without substantial evidence to support it, is against the weight of the evidence or erroneously declares or applies the law. We may exercise the power to set aside a judgment on the ground it is against the weight of the evidence only with caution and with a firm belief the decree or judgment is erroneous. *Murphy v. Carron*, 536 S.W.2d 30, 32[1-3] (Mo. banc 1976).

■ Heeding this admonition, after reconsidering the four non-exclusive factors employed in our reflections on § 452.330.1, this court agrees with the wife that the decree below, as it divided the marital property 86% in favor of the husband and a bare 14% in favor of the wife, is against the weight of the evidence and must be modified. Compare *Turley v. Turley*, 640 S.W.2d 473, 475[1] (Mo.App.1982) where the trial court's award to the husband of marital property having "almost twice" as much value as that awarded to the wife was held to be error and against the weight of the evidence. Also see *In re Marriage of Carmack*, 550 S.W.2d 815 (Mo.App. 1977), where it was held the trial court erred in awarding the husband 85 to 86 percent of the marital property, *id.* at 819[8], and that if the appellate court believed the trial court erred in the division of

marital property it was incumbent upon it to enter the judgment the trial court should have entered, *id.* at 817[2], "without remanding the same." *Calia v. Calia*, 624 S.W.2d 870, 874[12] (Mo.App.1981); Rule 84.14.

■ We are also of the opinion that the denial of maintenance to the wife, the denial of attorney fees to her, and the award of $60.00 per month per child were trial court actions not supported by substantial evidence and against the weight of the evidence.

While award of the business property to the wife would make the marital property division more equitable, since substantial rental income from the property would help satisfy the maintenance and child support needs of the wife, we do not know whether the husband has transferred or encumbered that property in such a way as to make it legally impossible to transfer fee simple title to that property to the wife. A reasonable alternative is to award her money to equalize the marital property imbalance, and in addition, to award her maintenance, attorney fees, and an increase in child support. Therefore, the trial court's judgment is modified as follows:

The husband is ordered to pay to the wife the sum of $22,500, as a part of the marital property division; the wife is awarded maintenance in the sum of $100.00 a month, $100.00 a month per child as child support, and $1,000 attorney fees. The $22,500 money judgment awarded to the wife is to be secured by a lien on any real estate owned by the husband.

As so modified, the judgment nisi is affirmed. The modified judgment will be set out in the mandate accompanying this opinion.

FLANIGAN and GREENE, JJ., concur.