**David R. GOLLER, Respondent,**

v.

**Dorothy E. GOLLER, Appellant.**

**No. WD 39899.**

Missouri Court of Appeals,
Western District.

Oct. 11, 1988.

Hamp Ford (argued), Susan Ford Robertson, Columbia, for appellant.

Michael P. Riley, Jefferson City, for respondent.

Before NUGENT, P.J., and CLARK and COVINGTON, JJ.

NUGENT, Presiding Judge.

Dorothy E. Goller appeals from the property disposition of the 1986 judgment dissolving her thirty-four year marriage to David R. Goller.

We reverse and remand with directions.

Dorothy E. and David R. Goller married on June 6, 1953. Mr. Goller had just completed his undergraduate education and entered the military. Mrs. Goller, a high school graduate, worked as a secretary while Mr. Goller was in the service and afterwards while he attended law school. Mr. Goller also worked while attending law

school, and the couple lived with his parents.

The Gollers have six children. Mrs. Goller continued to work outside the home after the birth of her first child, but she stopped in 1960 after the arrival of their third child and devoted her time to the duties of child-rearing and homemaking.

Mr. Goller earned substantially all of the family's income through his law practice and investments. Mrs. Goller did, however, contribute income to the family through the sale of real estate given her by and inherited from her parents.

Mr. Goller's law practice has thrived, and taxable income from his practice alone has been: in 1981—$105,880; 1982—$144,359; 1983—$171,000; 1984—$149,000; and 1985—$187,000. Mrs. Goller receives $331.00 per month from installment payments on a note from the sale of real estate and from rent of a house trailer.

On March 29, 1985, the Gollers separated; Mr. Goller filed for divorce on May 1, 1986. Mrs. Goller answered and cross-billed for dissolution on May 19. She filed for maintenance pendente lite, child support, suit money and attorney's fees on June 9. At that time two children still lived with Mrs. Goller, Michael, age twenty-three, and Andrea, age twenty and still dependent upon her parents for support. Both Mr. and Mrs. Goller are about fifty-five years old and in good health, although Mrs. Goller underwent surgery for breast cancer in 1980 and has undergone subsequent reconstructive surgeries.

On June 21, the court ordered Mr. Goller to pay $1,670 per month maintenance pendente lite, to pay all expenses and indebtedness pertaining to the family home, to provide reasonable maintenance on the house and medical insurance.

The trial court dissolved the marriage on April 3, 1987, and trial concerning division of the marital property, maintenance and child support followed on April 21.

Mrs. Goller requested a division of the assets on approximately a fifty-fifty basis. She suggested that the marital property, with a net worth of about $2,302,761, be divided into equal shares of $1,151,380 either through distribution of property with installment payments or by division of the property.

Mr. Goller proposed to award Mrs. Goller the Central States realty and $520,186.51. He suggested that she sell the family house and invest the money in government bonds. He also suggested that in ten years Mrs. Goller would have social security, medicare and other benefits available to the elderly.

On August 11, the court entered its judgment that the value of the marital property was $2,271,459.24. The court then reduced the value by $311,374. Included in that amount was Mr. Goller's estimates of past and future income tax liabilities of $126,500 and various debts owed. No actual tax assessments had been made or paid. The court determined that Mrs. Goller should receive property with a net value of $563,487.27 and that Mr. Goller should receive property with a net value of $1,707,961.78. In addition the court ordered Mr. Goller to make installment payments to Mrs. Goller of $50,000 per year for eight years, beginning on January 1, 1989. The court terminated all temporary orders. On September 23, the court denied Mrs. Goller's motion for new trial or to amend the judgment. This appeal followed.

On appeal Mrs. Goller contends that the trial court erred in its division of the marital property in that the court gave too much weight to the direct financial contributions of Mr. Goller and thereby failed to take into account or give fair value to her contributions as homemaker and mother, that the court erred in failing to take into account or give adequate weight to the financial circumstances of the parties, that the court erred in terminating all temporary orders pending this appeal, and that the court erred in reducing the marital property by $126,500 for estimated income tax liability because no substantial evidence supports the court's action.

■ On review we must affirm the trial court's decision unless the judgment contravenes the principles of *Murphy v. Carron*, 536 S.W.2d 30 (Mo.1976) (en banc), or

the court abused its discretion. *Dardick v. Dardick*, 670 S.W.2d 865, 868 (Mo.1984) (en banc). If error exists, we may enter the judgment the trial court should have entered. *Turley v. Turley*, 640 S.W.2d 473, 476 (Mo.App.1982).

We begin by noting that both parties agree that no marital misconduct was involved or to be considered in this case.

Mrs. Goller first contends that the trial court erred in its division of marital property. Her award, including installments, amounts to about thirty-six percent of the net marital estate. She argues that this decision goes against the weight of the evidence and that the trial judge abused his discretion in that he gave too much weight to the direct financial contributions of Mr. Goller and thereby failed to take into account or give fair value to her contribution as homemaker and mother for over thirty-four years.

■ Under § 452.330 [1] the court must divide the marital property as the court deems just after considering all relevant factors, including:

(1) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as a homemaker;

(2) The value of the property set apart to each spouse;

(3) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children; and

(4) The conduct of the parties during the marriage.

The statute requires "a fair and equitable division of the marital property in light of the circumstances attending each individual case." *Dardick, supra,* at 869.

■ Mrs. Goller also suggests that the court should not consider the installment payments as part of the division of marital property. Her award without those installments would represent only twenty-five percent of the estate. Installment payments are, however, an approved manner of distributing marital property. *See Spicer v. Spicer,* 585 S.W.2d 126 (Mo.App. 1979); *Doyle v. Doyle,* 577 S.W.2d 64 (Mo. App.1978). The trial court indicated that it intended the installments to serve that purpose. The extent to which those payments increase the value of Mrs. Goller's proportion of the marital estate should be their present value, not the total of payments. *See Spicer, supra* at 128–29 (suggesting that installments be valued as an annuity).

■ When we consider the full value of the installment payments, $400,000, Mrs. Goller's share of the marital estate still amounts to only thirty-six percent. In making this division of the marital property, the trial court, placed undue emphasis on the relative financial contributions of the parties. The trial judge said, "As to the division itself, I really researched not only Missouri cases but other cases, and you had that statute that lists all the factors dividing property, including the contribution of each party to the marriage. Which really—The other factors are not really of any persuasive weight, other than contribution." In fact, however, the court properly took into consideration the fact that in the marital property division he had assigned to Mr. Goller all the incumbered property and the indebtedness that burdened it. Nevertheless, by failing to consider all of the statutory factors, the trial court improperly applied the law.

In dividing marital property in Missouri, the trial court must follow the "two major guiding principles inherent in the statute [§ 452.330]: first, property division should reflect the concept of marriage as a shared enterprise similar to a partnership; and, second, property division should be utilized as a means of providing future support for an economically dependent spouse." *In re Marriage of Cornell,* 550 S.W.2d 823, 827 (Mo.App.1977), quoting from Professor Krauskopf's article, *A Theory for "Just" Division of Marital Property in Missouri,* 41 Mo.L.Rev. 165 (1976).

1. All sectional references are to Revised Statutes of Missouri, 1986.

In the present case Mr. and Mrs. Goller shared the responsibilities of marriage. In later years, he worked outside the home; she worked at home. This appears to have been by mutual agreement. Mrs. Goller had worked outside the home in the early years of their marriage while Mr. Goller was in service, attended law school and until after their third child was born. Theirs was a partnership.

■ While a fair and equitable division does not require an equal division, the fairness of the division certainly does not depend on the value of the marital property involved. In declaring, "I think if the amounts of money left for division, the smaller they are, I think the closer I would tend to be to 50–50," the trial court clearly abused its discretion and subverted the purpose of the statute. The statute makes no distinction between large and small marital estates.

■ The second major principle guiding the division of marital property impels the court to use the division to provide future support to an economically dependent spouse. *Cornell, supra.* In her second point Mrs. Goller argues that the court also erred in virtually ignoring the other factors to be considered. In the language of the statute, the trial court must also consider the "value of the property set apart to each spouse" and the "economic circumstances of each spouse at the time the division of property is to become effective." § 452.330.1(2) and (3).

At the time of the division of the marital property, Mr. Goller was a successful attorney, earning over $150,000 per year and looking forward to many more years of professional and business activity. Mrs. Goller had not worked outside the home for twenty-seven years; when she did work outside the home, she worked as a secretary. She has a high school education. Assuming that she chooses to acquire other skills or to update her secretarial skills, she must still face the facts that she has been out of the job market for over the better part of three decades and that she is presently over fifty-five years of age, factors that will impede her job search. Certainly

were she to get a secretarial job, her salary would be far too low to sustain her previous standard of living. But whether she works is irrelevant because even if she does, she is entitled to an equitable division of the marital property.

Mr. Goller cites five cases in which courts have affirmed disproportionate percentages of division of marital property and one case the court reversed in which a disproportionate percentage division occurred. *See Dardick v. Dardick,* 670 S.W. 2d 865 (Mo.1984) (en banc); *In re East,* 708 S.W.2d 777 (Mo.App.1986); *Scott v. Scott,* 645 S.W.2d 193 (Mo.App.1982); *Schwarz v. Schwarz,* 631 S.W.2d 694 (Mo.App.1982); *Stamme v. Stamme,* 589 S.W.2d 50 (Mo. App.1979); *In re Burris,* 557 S.W.2d 917 (Mo.App.1977). All five affirmances were in favor of wives who had not worked outside the home and were economically dependent on husbands who had. In *In re East, supra,* the court reversed an award that had given the husband eighty-six percent of the marital property and the wife fourteen percent.

Accordingly, we must reverse the trial court's division of marital property and remand the cause for reconsideration of the division based upon all of the factors contained in § 452.330. In making that determination, the court may consider the present value of any property division made in the form of installment payments and the income producing potential of and existing incumbrances on any property distributed.

■ In her third point on appeal, Mrs. Goller argues that the trial court erred in terminating her right to temporary maintenance pending appeal. She did not file a motion to continue temporary support pending appeal, but she did present the issue in her motion for new trial. Likewise, she filed no affidavits as called for under § 452.315. However, in this particular case, where evidence of the parties' income and expenses as well as the values of the marital property had been extensively developed and where the parties agree as to what property constituted marital property, affidavits simply would have

been redundant and, therefore, unnecessary. Mr. Goller made no motion opposing the temporary support order or its continuation.

■ In its judgment the trial court terminated all temporary orders but gave no reasons for doing so. Therefore, we have examined the court's language in the transcript and find that the court appears to have predicated its decision on a desire to save Mr. Goller money rather than on any consideration of the factors listed in § 452.335.2(1)–(7). The court stated, "And, of course, the danger to Mr. Goller is if he—he might end up being ordered to pay a fairly large sum of money, I'm going to overrule that request, deny that request." The court also said, "I don't think that would be appropriate under any theory to continue that." The circuit court has jurisdiction, however, to entertain a motion for temporary maintenance pending appeal in such amounts and on such terms as are just and proper in the circumstances authorized by § 452.315. *Nunn v. Nunn*, 644 S.W.2d 370, 372 (Mo.App.1982). *See also Noll v. Noll*, 286 S.W.2d 58, 62 (Mo.App. 1956).

Section 452.315.5 provides that "[o]n the basis of the showing made and in conformity with section 452.335 ... the court may issue ... an order for temporary maintenance ... in such amounts and on such terms as are just and proper in the circumstances." Before doing so, the court is to consider all relevant factors, including those set out in § 452.335:

(1) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

(2) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(3) The standard of living established during the marriage;

(4) The duration of the marriage;

(5) The age, and the physical and emotional condition of the spouse seeking maintenance;

(6) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance; and

(7) The conduct of a party seeking maintenance during the marriage.

■ Mrs. Goller presented in evidence a statement showing average monthly expenses of $5,024.46; the court ordered temporary support in the amount of $1,670 per month. Mrs. Goller is over fifty-five years of age and has a high school education; she is unemployed and has not been employed outside the home for years. The Gollers were married for thirty-four years and had established a high standard of living. Mr. Goller makes in excess of $150,000 per year and is capable of meeting his needs while meeting those of his wife. Looking at all the factors, we determine that the temporary maintenance order should have remained in effect pending the final disposition of this appeal, and on that point we reverse the judgment of the trial court.

■ In her fourth point appellant argues that the trial court erred in reducing the marital estate by $126,500 for estimated tax liability because no substantial evidence supports the court's action.

The court based its reduction of $126,500 on Mr. Goller's estimates. Mr. Goller testified that he had taken losses on tax returns in past years and had been informed by the Internal Revenue Service that it would not allow those losses. He also testified that he did not expect any penalties but that some amount of interest would be involved. In its judgment the court found that estimated taxes would be: in 1987—$41,000; 1986—$26,300; 1983—$32,500; 1982—$6,-200; 1981—$20,500; for a total debt owed of $126,500.

The record shows only that Mr. Goller testified that tax liability for 1981 would total about $19,000 and about the same amount in 1982. He stated that "1983 involves University Park" and that litigation

was then pending in Texas on that matter, but estimated no specific amount. Mr. Goller estimated the 1986 and 1987 tax; the Gollers' 1985 tax return was the only evidence of taxes paid.

 As a general rule, a judgment must be based upon evidence. *Smith v. Smith,* 558 S.W.2d 785, 790 (Mo.App.1977). A judgment based upon speculation cannot be sustained. *Brotherton v. City of Jackson,* 385 S.W.2d 836, 841 (Mo.App.1965).

No substantial evidence adduced supports the trial court's reduction of marital property by $126,500. Therefore, we reverse on this point and remand for an evidentiary hearing on the matter of tax liability and the subsequent reduction of the marital property in question.

For the foregoing reasons, we reverse the judgment and remand the case to the trial court with directions to reconsider the division of marital property in accordance with the principles set out in this decision and with directions to enter an order reinstating the temporary maintenance award to Mrs. Goller as of the date of the last payment by Mr. Goller of temporary maintenance to Mrs. Goller.

All concur.